## A96A0557. HUNT v. THE STATE.
### (473 SE2d 157)

POPE, Presiding Judge.

Thomas Jefferson Hunt, with co-defendants Mark Rodgers and Steve Jinks, was charged with manufacturing marijuana and with possession of more than one ounce of marijuana. The case was previously before this Court in *State v. Hunt*, 201 Ga. App. 327 (411 SE2d 273) (1991), in which the trial court's grant of the defendants' special demurrers was reversed. Thereafter, Hunt was tried, convicted and appeals. After reviewing his 44 enumerations of error, we affirm.

Viewing the evidence in the light most favorable to the verdict, on June 8, 1989, GBI agent Don Robertson learned that drug agents performing aerial searches had seen marijuana growing in a field on Old Macon Road in Griffin, Spalding County. The property identified by the helicopters was owned by appellant's father. There were two residences on the large tract of property, which were connected by a horseshoe-shaped trail. Appellant Hunt lived at 1768 Old Macon Road and the other residence, 1766 Old Macon Road, had previously been rented to Mark Rodgers. The residences were 50 to 100 yards apart.

After receiving the information from the aerial observers, Officer Robertson went to the specified field and observed marijuana seedlings growing under a wooden frame with a screen. The trail to the seedling bed was 10 to 15 feet off the horseshoe trail connecting the two residences. Robertson recalled that the helicopters were audible during his investigation.

After investigating the seedling bed, Robertson stood outside of the 1768 house and saw a man, later identified as Hunt, walking towards the house, and away from the seedling field on the trail. As Hunt approached, he threw a camouflage shirt on the ground. Hunt was sweating profusely, seemed out of breath and had fresh scratches on his arms and hands. Hunt told the officers that he had lost his dog. On the basis of the marijuana discovery, Robertson advised Hunt of his rights.

Immediately after talking to Hunt, Robertson returned to the seed beds and discovered that the plants had been removed from the

wooden box and were not in the immediate vicinity. Robertson placed Hunt under arrest for manufacturing marijuana. The seedlings were later found less than 100 yards from Hunt's house in a wooded area behind a barn.

After arresting Hunt, the helicopter observers directed Robertson to four more plots of growing marijuana plants. Each field was about 100 by 50 feet and was well cultivated. Spots of Castrol brand motor oil were found on one of the fields, as well as empty bags of fertilizer and lime. The officers found 369 marijuana plants in the first field; the second field contained 190 plants; the third had two plants and there were fresh holes in the dirt from where other plants had been recently removed; and the fourth field had 746 growing plants. New chicken wire surrounded one field. The fourth field was 2/10 of a mile down a dirt road away from 1768 and then off a trail. The second field was a couple of hundred yards from the 1768 house; a break in the woods where vehicles traveled indicated the path to the field. The officers found no evidence of drugs in Hunt's home. In the barn behind Hunt's house, the searching officers found a roll of new chicken wire and a bag of lawn lime — both of the same type which was found on the marijuana fields. Milk cartons similar to those found on the seedling bed were found behind the barn. Many types of cultivation instruments were in the barn and Castrol motor oil also was found. A pump house located near Hunt's residence, the utility bill for which was in Hunt's name, had a hose which could reach to the seedling bed.

The officers obtained a search warrant for the rental residence at 1766 Old Macon Road. When the officers entered the residence, music was playing and the kitchen light was on. Nonetheless, no one was in the residence. In the ensuing search, the officers found four bales of marijuana in a cardboard box addressed to Christie Harris. The marijuana weighed about 70 pounds. The officers also found scales, pipes, and several different plastic baggies with marijuana and marijuana seeds around the house.

The officers learned that Rodgers, the most recent tenant, was staying at a Dixieland Motel in Commerce, Georgia. The officers drove an hour and forty-five minutes to the motel and saw Rodgers leaning into a car driven by Steve Jinks. Jinks denied knowing Rodgers.

Items found in the search of the 1766 house were taken to the crime lab for fingerprint analysis. Although none of Hunt's fingerprints were found, co-defendant Jinks' fingerprints were detected.

Phone records showed various calls between Jinks, Rodgers and Hunt. Jinks had also called Christie Harris' husband between 20 and 25 times in June 1989. There was also evidence that Jinks and Hunt went fishing together frequently.

Rodgers' defense was that he moved from 1766 several months before the June search. There was evidence that Rodgers found a job in Commerce in March 1989, and was still working there as of June 1989. In fact, in a subsequent eviction proceeding, the magistrate court found that Rodgers had abandoned the 1766 property as of November 1988 — seven months before the June search.

Despite Rodgers' absence from the property, the 1766 property was being used in June 1989. At the time of the search, the refrigerator was operating and contained some unspoiled food. Moreover, telephone records showed that two calls from Jinks' number were accepted at 1766 on the search date.

The jury returned a verdict of guilty on both counts against Hunt; acquitted Rodgers of both charges; and found Jinks guilty of possession, but not guilty of manufacturing.

1. In several enumerations, Hunt argues that the verdict was contrary to the law, the weight of the evidence, and that his motion for a directed verdict of acquittal was improperly denied. We disagree. This court's review is limited to the sufficiency, not the weight, of the evidence. *Jenkins v. State*, 216 Ga. App. 433 (1) (454 SE2d 543) (1995). After reviewing the record, we find that a rational trier of fact could find from the evidence adduced at trial proof of Hunt's guilt of the crimes of manufacturing marijuana and possession of more than one ounce of marijuana beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Hunt's motion for directed verdict was also properly denied, since the standard for review of this denial is that of *Jackson v. Virginia*; see *Harvey v. State*, 212 Ga. App. 632, 634 (2) (442 SE2d 478) (1994).

Specifically, with respect to manufacturing, there was sufficient evidence linking Hunt to the marijuana growing in the fields to authorize his conviction. Hunt's appearance when approaching the officers at his house and the disarray of the seedling plants after the officers' initial search, along with the cultivating materials found in the barn, the evidence in the barn which corresponded to items in the fields, the number of marijuana plots, and the proximity of the fields to Hunt's home constituted ample evidence of his guilt. Moreover, "[t]he beaten path doctrine allows connection of contraband found in close vicinity to a house so as to authorize rational jurors to conclude beyond reasonable doubt that the primary resident of that house owned or had control over the contraband." (Citation and punctuation omitted.) *Holland v. State*, 205 Ga. App. 695, 696 (1) (423 SE2d 694) (1992).

The evidence adduced was also sufficient to convict Hunt on the possession charge. Circumstantial evidence established that Rodgers had vacated the 1766 address, and that Hunt was using the property. These facts, combined with the harvested marijuana found in the

house, are sufficient under *Jackson v. Virginia*. Moreover, the jury was charged both on conspiracy to commit a crime and on being a party to a crime, and Hunt's guilt could also be established under these theories. See generally OCGA § 16-2-20.

2. Hunt argues that the court erred in sentencing him on both the manufacturing and possession counts since the offenses merged. "OCGA § 16-1-7 (a) (1) pertinently provides: 'When the same conduct of an accused may establish the commission of more than one crime, the accused . . . may not, however, be *convicted* of more than one crime if: (1) One crime is included in the other.' (Emphasis supplied.) OCGA § 16-1-6 (1) contains the standards for determining whether an offense is lesser included as a matter of fact; the second subsection of this Code provision sets out the standards for determining whether the offense is lesser included as a matter of law. . . . OCGA § 16-1-6 (1) provides that an offense can be a lesser included offense, as a matter of fact, when: '(1) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged.' 'That portion of OCGA § 16-1-6 (1) pertaining to a proof of the same facts test is but a variant application of the "uses up all the evidence" test. . . .' " *Hancock v. State*, 210 Ga. App. 528, 531-532 (3) (b) (437 SE2d 610) (1993).

The crimes of manufacturing marijuana and possession of more than one ounce of the drug did not merge as a matter of law. OCGA § 16-13-21 (15), which proscribes the manufacture of marijuana, applies to the cultivation or planting of marijuana. *State v. Hunt*, 201 Ga. App. at 327. "Possession of marijuana is not a necessary element of the crime of knowingly manufacturing marijuana by cultivating or planting, and so misdemeanor possession is not a lesser offense included in the crime of manufacturing as a matter of law, within the meaning of OCGA § 16-1-6." *Galbreath v. State*, 213 Ga. App. 80, 81 (1) (443 SE2d 664) (1994). Similarly, possession of more than one ounce of marijuana is not, as a matter of law, a lesser included offense of manufacturing marijuana.

Thus, the issue is whether the crimes merged as a matter of fact, i.e., whether the manufacturing count "used up" all of the evidence for the possession count. "In determining whether a crime is established by proof of the same or less than all the facts required to establish the commission of another crime within the meaning of OCGA § 16-1-6, we look to the actual evidence introduced at trial." (Citation and punctuation omitted.) *Fonseca v. State*, 212 Ga. App. 463 (1) (441 SE2d 912) (1994). Here, the evidence presented regarding the growing marijuana plants established the manufacturing count. The evidence supporting the possession count was the marijuana found in the rental house. Although the harvested marijuana *could* be used as circumstantial evidence of manufacturing, see *Holland v. State*, 205

Ga. App. at 698, in this case the marijuana in the rental house gave rise to a separate charge against Hunt. Because the evidence required to establish the manufacture charge was not required to prove possession, the crimes did not merge. Compare *Hancock v. State*, 210 Ga. App. at 533 (3). Further, the separateness of the evidence used to prove the two crimes is demonstrated by the jury's acquittal of Jinks on the manufacture charge, and conviction on the possession count.

For the reasons set forth above, Hunt's argument that the State should have been required to elect between the two charges is without merit.

3. The court imposed a sentence against Hunt of eight years to serve and seven years on probation, including a requirement of eight hours a week of community service. Additionally, the court imposed a $7,500 fine and restitution in the amount of $15, stating: "payments are $15 monthly probation fee to be paid thru assigned probation office beginning 30 days after release from custody. Remaining monies to be paid to the Griffin Probation Office at rate of $180.00 per month beginning 30 days after release from custody."

Here, Hunt claims that the fine imposed was improper because no evidence was presented regarding his ability to pay. This argument is without merit. See generally *Reid v. State*, 204 Ga. App. 358, 361 (4) (419 SE2d 321) (1992). "Under *Bearden v. Georgia*, 461 U. S. 660, 672 (103 SC 2064, 76 LE2d 221) (1983), if a court determines that a fine or restitution is the appropriate and adequate penalty for a crime, it may not imprison a person solely because he lacks the resources to pay it. A *Bearden* hearing as to defendant's ability to pay is required only when a fine is made a condition precedent of probation or probation is about to be revoked for failure to pay a fine. Since neither is the case here, with respect to the complained-of [fine], *Bearden* does not apply. Appellant did not at the time sentence was imposed, and does not in the future under the terms of the sentence, face imprisonment if he is unable to repay the county. . . . For that reason, *Massey v. Meadows*, 253 Ga. 389 (321 SE2d 703) (1984), is also inapplicable because in that case, incarceration in jail was the result of defendant's non-wilful failure to pay a fine at the outset. The court had determined that probation was an appropriate sentence but required that the fine be paid first. Here, the obligation is a condition *of* probation. Appellant [will enter] probation with an opportunity to pay in the future; probation was not withheld nor did incarceration follow any non-payment of financial obligations." *Penaherrera v. State*, 211 Ga. App. 162, 164-165 (2) (438 SE2d 661) (1993).

4. Citing *State v. Stamey*, 211 Ga. App. 837 (440 SE2d 725) (1994), Hunt argues that the indictment on its face was insufficient in that the specific amount of marijuana was not alleged. Regardless

of whether Hunt properly preserved this argument for review, it is without merit. See, e.g., *Latimer v. State*, 134 Ga. App. 372 (4) (214 SE2d 390) (1975).

5. Hunt argues that the court failed to charge the jury on impeachment as requested and that the court did not properly charge the jury on intent and conspiracy. We have reviewed the record and find these arguments without merit.

6. In contrast to Hunt's arguments, we conclude that the trial court did not improperly comment on the evidence. Further, the court did not err in preventing Hunt's attorney from asking certain questions on redirect.

7. The court did not err in denying Hunt's motion for mistrial. We also reject Hunt's argument that the court prevented him from perfecting the record with respect to this motion.

8. Hunt argues that his motions for mistrial, continuance and change of venue based on misleading newspaper coverage were improperly denied, since the circulation rate of the paper was so high that it precluded a fair trial. Voir dire was not transcribed and we find this argument without merit.

9. Many of Hunt's other enumerations of error can be summarily resolved. To the extent that Hunt's arguments regarding various evidentiary matters were properly preserved and are properly argued, they are without merit. Similarly, to the extent that Hunt's remaining enumerations of error can be deemed not to have been abandoned, see Court of Appeals Rule 27 (c) (2), we find them without merit. We also reject Hunt's arguments which contend that the court improperly admitted certain harmful, irrelevant testimony.

*Judgment affirmed. Andrews and Smith, JJ., concur.*

DECIDED MAY 23, 1996 —
RECONSIDERATION DENIED JULY 2, 1996 — 

*Mullins & Whalen, Nancy A. Bradford*, for appellant.
*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.