### A01A1447. SHELTON v. THE STATE.
(553 SE2d 358)

ELDRIDGE, Judge.

A Gwinnett County jury found Jack Lee Shelton guilty of kidnapping with bodily injury (Count 1), aggravated assault (Count 2), and armed robbery (Count 3). Shelton was sentenced on Count 1 to life imprisonment, on Count 2 to 20 years to serve concurrent to Count 1, and on Count 3 to 20 years to serve consecutive to Count 1. Without challenging the sufficiency of the evidence, Shelton appeals from the denial of his motion for new trial, as amended, enumerating four errors of law he contends require reversal. After reviewing these issues, we find no error and affirm his convictions.

Viewed in a light most favorable to the verdict,[1] the evidence shows the following: on September 6, 1998, the victim, a 22-year-old female, on the way back from visiting her father, stopped for gasoline at the RaceTrac gas station at the Buford Highway exit of Highway 985. While she was pumping gas, Shelton approached her and asked for a ride to a friend's house. The victim refused, stating that she was not going in that direction. As she was putting the gas cap on her car, Shelton approached her again; grabbed her arm; put a sharp object to her side, which she thought was a knife, later determined to be a tire hole plugger; and demanded that she take him "where he wanted to go."

After forcing the victim into the car, Shelton demanded that she proceed south on Highway 985. A couple of minutes after they entered onto Highway 985, Shelton grabbed the victim's purse, which was on the floorboard of the car. He asked if she had any money and took a check out of her checkbook, placing it in his pocket. Shelton told the victim not to do anything stupid because he now had her home address. The victim testified that she did not stop Shelton from taking the check because she knew Shelton still had the tire hole plugger and "was afraid to tell him not to take anything at that point."

The victim continued to drive for approximately 20 to 30 minutes, with Shelton directing her where to turn. Finally, Shelton told the victim to stop at some pay telephones by a gas station. Three men were standing by the telephones, and Shelton rolled down his win-

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

dow and asked "if they knew where he could get some smoke." The three men did not speak English, and Shelton instructed the victim to drive off. About five or ten minutes later, after directing the victim to make several more turns, Shelton told the victim to pull into the parking lot of a convenience store and stop near the door. Without leaving the car, Shelton purchased a partial pack of cigarettes from a man who was walking out of the store. Then, Shelton directed the victim to drive to the corner of the store where a woman was standing. Shelton asked the lady if "he could get a 50 from her." The woman told Shelton she would take him someplace else, got into the backseat of the car, and directed him to a nearby convenience store. On the way, the woman gave Shelton a beer at his request.

After the woman exited the car and walked over to a man, Shelton directed the victim to turn the car so that it was facing the parking lot exit. The woman returned with something in her hand and told Shelton, "I have it; where's your money?" Shelton handed the woman a couple of dollars that were folded to look like more money, snatched the package out of the woman's hand, and yelled at the victim to "go, go, go." In the time it took the victim to put the car in drive, the woman reached into the car and grabbed the victim's purse and stated, "I know where you live now."

Shelton kept directing the victim where she should drive. While they were driving, Shelton bent the beer can and lit something on it. The victim testified that she could hear him sucking through the can. After driving around a while longer, Shelton directed the victim to pull into a church parking lot and drive to the rear of the building. Shelton made the victim get out of the car, give him the car keys, and sit on the hood of the car while he urinated. Shelton then directed the victim to get back into the car and continue driving. He finally had her stop at a bike path and drive around the posts that blocked the entrance so that the car was out of the street light and in the trees along the bike path. Shelton made the victim get out of the car and stand while he smoked what he had grabbed from the woman. Shelton then forced the victim to allow him to perform oral sodomy on her. Shelton then forced the victim to perform oral sodomy on him. Shelton attempted to have both anal and vaginal intercourse with the victim. Shelton, however, had difficulty maintaining an erection and was unable to penetrate the victim's rectum. However, he managed to penetrate her vagina. Finally, Shelton forced the victim to again perform oral sodomy on him while he orally sodomized her.[2]

When Shelton heard sirens nearby, he told the victim to get

---

[2] The acts of sexual assault occurred in DeKalb County and are not part of the instant appeal.

dressed. When the victim tried to put on her undergarments, Shelton told her to put them in the car and to put on her shorts and shirt only. Shelton then forced the victim to drive him home. When Shelton exited the victim's car, he warned her not to tell anyone what had happened because he knew where she lived. When the victim drove off, she saw the tire hole plugger in the seat where Shelton had been sitting. The victim testified that after Shelton got out of her car, she was afraid to go home because he might follow her there. She drove immediately to American Pie, where friends worked and made an outcry. *Held*:

1. Shelton alleges that the trial court erred in failing to merge the aggravated assault conviction with the armed robbery conviction for the purpose of sentencing. We disagree.

> While it is settled that aggravated assault is not included in robbery, armed robbery or attempted armed robbery as a matter of law, it may be included as a matter of fact. The key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge.

(Punctuation and footnotes omitted.) *Braswell v. State*, 245 Ga. App. 602, 604 (4) (538 SE2d 492) (2000).

While the State apparently concedes in its brief that the two offenses factually merge, we do not agree. Under the facts of this case, each of the offenses is separate and distinct with independent supporting facts. The record shows that the aggravated assault charge is based on proof that at the RaceTrac gas station Shelton put a tire hole plugger, which the victim thought was a knife, to the victim's side and forced her into her vehicle. The offense of aggravated assault was then complete. The facts which prove the armed robbery, including the intent to rob, occurred several minutes later, after the victim and Shelton had driven onto Highway 985. At this point, Shelton grabbed the victim's purse and took a check out of her checkbook. While Shelton did not brandish the tire hole plugger at the victim contemporaneously with taking the check, the victim testified that she knew Shelton still had the tire hole plugger and was afraid to try and stop him from taking the check. "Circumstantial evidence may establish the presence of a weapon during a robbery even though the weapon is unseen. [Cit.]" *Maddox v. State*, 238 Ga. App. 598 (1) (521 SE2d 581) (1999). Hence, the jury was authorized to conclude that Shelton maintained control of the tire hole plugger throughout the robbery. See *Culver v. State*, 230 Ga. App. 224, 232 (496 SE2d 292) (1998).

2. Shelton alleges that reversal of his convictions is mandated because the videotape of Shelton's statement to Officer Beining was not redacted to remove evidence brought up by Officer Beining regarding Shelton's drug use. Shelton argues that such evidence improperly placed his character into evidence. We disagree. "Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. [Cit.]" (Punctuation omitted.) *Davis v. State*, 240 Ga. App. 301, 302 (1) (522 SE2d 729) (1999).

In this case, Officer Beining initially told Shelton that he suspected that Shelton's need for drugs was a compelling factor which motivated him to commit the acts under investigation and questioned Shelton about his use of drugs. Shelton admitted that cocaine was a very addictive drug and stated that he used cocaine and marijuana approximately two and one-half years earlier, that it ruined his life, but that he no longer used drugs. After this initial discussion of Shelton's possible drug addiction as a motive for his actions, Shelton denied all of the victim's allegations and stated that he met the victim at the RaceTrac gas station and she offered him a ride home. At this point, Shelton denied having any sexual encounter with the victim. Following Shelton's denial of the victim's allegations, Officer Beining once again told Shelton that he felt that his "crack" problem was the reason he committed the offenses against the victim. Shelton then asked Officer Beining to "get me some kind of help." He admitted that he abducted the victim by threatening her with a tire hole plugger; that he took her check from her checkbook; that he forced her to drive him to obtain drugs; that he took the drugs from the woman at the convenience store without paying for them, causing the woman to steal the victim's purse; that he smoked the crack cocaine; and that he sexually assaulted the victim. At the end of his confession, Shelton once more told Officer Beining that "I need help." Based on Shelton's statements that he needed help, it would be reasonable for the jury to infer that Shelton's drug use was Shelton's motive for committing the crimes he was accused of. This is especially true in light of the victim's testimony that, when Shelton abducted her, Shelton stated that "he wanted to go and have a good time, and as long as I cooperated with him, he wouldn't hurt me physically or sexually" and that Shelton was initially preoccupied with obtaining and using drugs.

> [A]lthough motive is not an essential element in proving the crime charged, the State is entitled to present evidence to establish that there was a motive, and evidence that the defendant [used] drugs is relevant to prove that he had a motive for committing the crime and is not rendered

> inadmissible by the fact that it incidentally puts his character in issue.

(Citation and punctuation omitted.) *Davis v. State*, supra. See also *Brady v. State*, 270 Ga. 574, 578-579 (513 SE2d 199) (1999).

Moreover, the evidence Shelton complains of is cumulative of the victim's testimony of Shelton's drug use and of Shelton's own testimony at trial that he and the victim were riding around looking for drugs and that he smoked some of the cocaine they purchased. "The admission of cumulative evidence is harmless. [Cit.]" *Jowers v. State*, 245 Ga. App. 773, 776 (6) (538 SE2d 853) (2000).

3. Shelton alleges that the trial court erred in denying his motion to redact Officer Beining's comments regarding the victim's credibility from the videotape of the interview. Specifically, Shelton objects to Officer Beining's stating, "Jack, Jack, let me tell you something. This girl isn't lying to me, and you hurt her, OK?"

"The credibility of a witness is a matter to be determined by the jury. OCGA § 24-9-80. Georgia does not allow witnesses to opine that a party or victim is lying or telling the truth, for under this statute credibility is a matter solely within the province of the jury. An expert witness may not testify as to his opinion of the victim's truthfulness." (Citations and punctuation omitted.) *Rose v. Figgie Intl.*, 229 Ga. App. 848, 857 (3) (a) (495 SE2d 77) (1997).

In this case, the comment that Shelton objects to is not the sworn testimony of a witness at trial, but is part of a videotaped interview between Officer Beining and Shelton in which Officer Beining makes this statement to elicit a response from Shelton as to the truth of what happened. When Officer Beining testified at trial, he made no comment on the victim's truthfulness. However, we need not address whether the failure of the State to redact Officer Beining's statement from the videotape is error. We conclude that, even if error, given the overwhelming evidence of Shelton's guilt and the context of the evidence as a whole, it is highly probable this remark did not contribute to the verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

4. In his final enumeration of error, Shelton alleges that the trial court erred in denying defense counsel's motion to redact victim impact material from the videotape of the interview shown to the jury. However, Shelton did not object to the admission of the video on this ground at trial. "In order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that specific ground. [Cits.]" (Punctuation omitted.) *Campbell v. State*, 228 Ga. App. 258, 263 (3) (b) (491 SE2d 477) (1997). "The rule is that the scope of review is limited to the scope of the ruling in the trial court as shown by the trial record and cannot be enlarged or transformed

through a process of switching or shifting. [Cit.]" (Punctuation omitted.) *Parrish v. State*, 237 Ga. App. 274, 280-281 (4) (514 SE2d 458) (1999). Accordingly, Shelton waived this issue on appeal.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 1, 2001.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, R. Keith Miles, Assistant District Attorney*, for appellee.