## A01A2538. HILL v. THE STATE.

(560 SE2d 88)

POPE, Presiding Judge.

Paul Gregory Hill appeals following his conviction on one count of trafficking in methamphetamine.

Viewed in the light most favorable to the verdict, the evidence showed that Hill rented a trailer in a small, secluded trailer park in Crawford County. At one point, his next-door neighbors and their visitors began to notice an unusual ammonia or ether smell coming from Hill's trailer and saw a lot of cars going in and out of the area of the trailer. Hill was seen at his trailer on at least one occasion when this peculiar odor was present. On another occasion, Hill told one of the neighbors that he had "cooked" "crystal meth," and explained the amount of profit he received from making the drug. The neighbors contacted Harry Colbert, a drug enforcement officer with the Bibb County Sheriff's Department, about the situation and began helping him by recording tag numbers from the cars going in and out. The neighbors also paged Colbert whenever they noticed the odor from Hill's trailer.

On December 30, 2000, the neighbor's brother and his wife smelled the ammonia/ether odor. The brother later became involved in an altercation with a visitor to Hill's trailer. The neighbors reported the incident to the Crawford County Sheriff's Department, and they also called Officer Colbert. They then told Hill's minor son that the police were on the way, and the son and two young girls began removing items from the trailer and putting them in the woods. Among the items was at least one large glass pickle jar. The neighbors later directed Officer Colbert to where Hill's son and the others had placed these items. The officer retrieved a large pickle jar and empty starter fluid cans with holes in the bottom of them from those locations. The glass jar contained a white residue.

Officer Colbert also collected metal pots and additional jars from around Hill's trailer and observed more starter fluid cans with holes in them lying under the trailer. The pots contained a dried residue, which appeared to be from where something had been cooked in them. The pots also bore the odor the neighbors had previously noticed. In addition, the neighbor's brother discovered syringes and boxes of Sudafed in a common driveway, which he turned over to police.

None of the witnesses saw Hill at his home at the time of these events, but Hill's van was parked nearby.

At trial Officer Colbert testified that a popular method of manufacturing methamphetamine called "cold cooking" involves the use of Sudafed and starter fluid, among other substances. He noted that it is common to punch a hole in the bottom of starter fluid cans to let all

the liquid drain out of the can for use in the process. There was also evidence that Hill's property contained a propane tank, the spigot of which showed signs that anhydrous ammonia had been stored there. Anhydrous ammonia is another ingredient commonly used in the cold cooking process.

At trial, Officer Colbert testified that the glass jars from in and around Hill's property contained a liquid, with a solid white substance in the bottom which appeared consistent with the methamphetamine manufacturing process. He took them back to his office to allow them to dry out so the substance could be tested for methamphetamine. In addition, he scraped down the sides of the metal pots and collected the scrapings. Once the residue from the pickle jars dried out, Officer Colbert combined the materials from both the jars and the metal pots into the same bag for testing. These materials tested positive for methamphetamine and had a combined weight of 90.5 grams.

1. Hill first contends that the trial court erred in denying his motion for directed verdict and motion for new trial on the ground of equal access. He asserts that there was no proof directly linking him to any methamphetamine, noting that all the containers were found outside of his home, where anyone could have had access. Hill also notes that the items removed from his home were moved by his son and the two females when Hill was not at home.

"A rebuttable presumption arises when one leases premises, and contraband is found therein, that the lessee is in possession of the entire premises and all the property found on the premises." (Citation and punctuation omitted.) *Emerson v. State*, 220 Ga. App. 485, 487 (2) (469 SE2d 520) (1996). This presumption can be overcome by evidence that "persons other than the defendant and members of his immediate household had equal opportunity to commit the crime." (Citation, punctuation and emphasis omitted.) *Childers v. State*, 218 Ga. App. 457, 458 (1) (462 SE2d 412) (1995). The question of whether the presumption is overcome by evidence of equal access is for the jury. *Emerson v. State*, 220 Ga. App. at 487 (2).

Here, the evidence showed that Hill resided in the trailer with his 14-year-old son. On the day the materials were confiscated, only Hill's son and two young females were seen moving items from the trailer into the woods. The witnesses described these females as "kids" and as being younger than Hill's son. One was described to police as looking about nine years old.[1] At least one of the items

---

[1] A man and woman also had visited Hill's trailer earlier for a brief period. The man was the one who later got into the altercation with the neighbor's brother. These individuals were seen going into the trailer and coming right back out to their car where they appeared to be "doing drugs." We have previously held under similar facts that "[m]erely being some-

moved by Hill's son was a glass pickle jar confiscated by police, along with the other jars and metal pots found in the immediate vicinity of the trailer. It is undisputed that at least one of the jars or pots contained methamphetamine. And the lab results showed methamphetamine in the combined residue.

And although the jar removed by Hill's son from the trailer was not proven definitely to have contained methamphetamine, Officer Colbert testified that the appearance of the residue inside was consistent with at least one stage of the process of making the drug. The jury could have inferred that the jar taken from the trailer was connected to the nearly identical jar found outside the trailer. And in turn, that the jars were connected with the metal pots found there.

Although these items were found in the open where others could have had access, the jury could have found that no one had an opportunity equal to that of Hill, as the only adult in residence, to have possessed the numerous containers that were in and around his trailer. See *Sears v. State*, 244 Ga. App. 718, 719 (536 SE2d 605) (2000). Or jury could have found that Hill possessed these containers jointly with his son. See *Childers v. State*, 218 Ga. App. at 458 (1).

Such findings were bolstered by evidence that Hill had been present on earlier occasions when the ammonia/ether smell was coming from the trailer, and he had admitted to cooking "crystal meth" on the premises.

Accordingly, we find that there was sufficient evidence to connect Hill to the various containers found on his premises and that the equal access rule did not bar his conviction.

2. Hill also argues that the trial court erred in denying his motions for directed verdict and new trial on the ground that the evidence was commingled, altered, adulterated, substituted, and tampered with by police. This ground can be summarized as an assertion that the state should not have mixed the evidence from the individual containers before testing.

As an initial matter, we note that the state proved the chain of custody of this evidence from in and around Hill's residence through the testing procedure at the state crime lab and into evidence at trial. Therefore, there is nothing to indicate that the state submitted materials other than those collected from around Hill's trailer to the crime lab. Nevertheless, we find that because the materials from all the jars and pots were combined into one bag, there is insufficient evidence to show that Hill possessed the required quantity of meth-

---

where within the premises for a relatively short but unspecified time before drugs subsequently are found therein does not reasonably raise the defense of equal access." *Jones v. State*, 200 Ga. App. 519, 520 (2) (b) (408 SE2d 823) (1991).

amphetamine mixture to support his conviction for methamphetamine trafficking.

Hill was charged with possessing 28 grams or more of a mixture of methamphetamine with the intent to distribute it. Under OCGA § 16-13-31 (e), "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, . . . *or any mixture containing . . . methamphetamine . . .* commits the felony offense of trafficking in methamphetamine. . . ." (Emphasis supplied.) There is no requirement that a specific quantity of methamphetamine be present in the mixture in order to constitute a violation of the statute. See *Belcher v. State*, 161 Ga. App. 442, 443 (1) (288 SE2d 299) (1982).[2] We note, however, that the trial court charged that the jury had to find that Hill possessed 28 grams of methamphetamine, not a mixture thereof, in order to convict him for trafficking. This instruction set a higher standard of proof than required by the indictment. See generally *Daniel v. State*, 251 Ga. App. 792, 793 (555 SE2d 154) (2001).

The evidence showed that the mixture of materials from all the containers contained some unknown quantity of methamphetamine and weighed a total of 90.5 grams. But Officer Colbert testified that the material in the pickle jars could have come from any stage in the manufacturing process, including the initial stage. In the first stage, Sudafed tablets are soaked in denatured alcohol to separate the principal ingredient, which Officer Colbert stated was ephedrine, from the bonding agents in the Sudafed tablets. From that point, a number of steps must be taken to trigger the chemical reactions eventually resulting in methamphetamine. Thus, the material in the pickle jars could have been nothing more than a mixture of alcohol and Sudafed, which when dried left simply ephedrine or an ephedrine mixture of some kind. Therefore, while it is undisputed that at least one of the containers contained methamphetamine, the state did not establish that each container held the drug.

And while the combined residue from the containers weighed 90.5 grams, there was no evidence as to how much the residue from each container weighed. Officer Colbert estimated that he took equal amounts from each container, but there was no evidence as to the relative weight of these amounts. The record is also devoid of evidence as to the relative weight of the materials found at the various stages in the methamphetamine cooking process. As a result, it cannot be

---

[2] The *Belcher* case was construing a pre-1986 version of the cocaine trafficking provision, currently codified at OCGA § 16-13-31 (a). That provision was amended in 1986 to require a "mixture with a purity of 10 percent or more of cocaine" in order to constitute a trafficking violation. Ga. L. 1986, p. 397, § 1. The methamphetamine provisions contain no such requirement.

determined, for example, if an amount of ephedrine would weigh more or less than an equal amount of methamphetamine. And because the combined mixture was not tested to determine the percentage of methamphetamine it contained, the relative weight of the drug cannot be determined. See, e.g., *Barnett v. State*, 204 Ga. App. 491, 496 (3) (420 SE2d 43) (1992). It is impossible, therefore, to determine how much of these materials was methamphetamine and how much may have been simply ephedrine or something else. Therefore, there was insufficient evidence to support a conviction based upon the jury charge.

Nor was there sufficient evidence to support a trafficking conviction as alleged in the indictment. While the statute does not require that a methamphetamine mixture contain any particular percentage of the drug, it does require that the defendant *possess* the mixture. Here, Hill did not possess the mixture sent to the lab for testing. He merely possessed the component parts of that mixture. It was Officer Colbert who combined the components to create the mixture. And when he combined the components, it became impossible to determine if Hill had possessed 28 grams of methamphetamine or even a 28-gram mixture containing methamphetamine. The only thing that the state proved is that Hill possessed some unknown quantity of the drug.

Since this evidence was sufficient to support a verdict on the lesser included offense of possession of methamphetamine, OCGA § 16-13-30 (a), we remand the case with direction that the judgment of Hill's conviction for trafficking in methamphetamine be vacated and a judgment and sentence for possession of methamphetamine be entered. See generally *Greene v. State*, 230 Ga. App. 155, 157 (2) (495 SE2d 634) (1998); *McNair v. State*, 226 Ga. App. 516, 518 (1) (487 SE2d 100) (1997).

3. We find no merit in Hill's remaining enumeration of error.

*Judgment vacated and case remanded with direction. Blackburn, C. J., and Mikell, J., concur.*

DECIDED FEBRUARY 11, 2002.

*F. Robert Raley*, for appellant.

*Howard Z. Simms, District Attorney, Sharell F. Lewis, Assistant District Attorney*, for appellee.