A04A1512. BRYAN v. THE STATE.
(608 SE2d 648)

RUFFIN, Presiding Judge.

A jury found Ronnie Lee Bryan guilty of possessing methamphetamine, possessing methamphetamine with intent to distribute, and manufacturing methamphetamine. On appeal, Bryan challenges the sufficiency of the evidence. He also contends that the trial court erred in denying his motion to suppress, admitting certain evidence, and failing to merge the offenses for sentencing purposes. Finally, Bryan alleges that he received ineffective assistance of counsel. For reasons that follow, we affirm Bryan's conviction, but we remand the case to the trial court for further proceedings.

1. On appeal from a criminal conviction, Bryan no longer enjoys a presumption of innocence.[1] Rather, we construe the evidence in the light most favorable to support the jury's verdict, and we do not weigh the evidence or determine witness credibility.[2]

Viewed in this manner, the evidence shows that on November 22, 2002, law enforcement officers from the Whitfield County Sheriff's Department went to Bryan's house to investigate allegations that he was manufacturing methamphetamine. At the time, Bryan was home with his ex-wife, Johnnie Sue Bryan, and his girlfriend, Telina Wasserman. Detective Daniel Rann knocked on the door, which

---

Bryan answered. Rann asked whether Bryan would speak with him about the investigation, and Bryan responded affirmatively and stepped back to let the officers into the house. Raymond Grossman, an investigator for the sheriff's department, testified that he could "smell the meth[amphetamine] lab chemicals." From his vantage point, Grossman saw on the dining room table liquid-filled Mason jars, which are used in the manufacturing of methamphetamine. Grossman then asked Bryan where the methamphetamine lab was located, and Bryan said that it was in the back of the house.

Bryan, his ex-wife, and Wasserman were arrested, and a urine sample taken from Bryan tested positive for methamphetamine. Law enforcement officers obtained a search warrant, which was executed by Christian Matchett, a Georgia Bureau of Investigation agent who specializes in dismantling drug laboratories. Matchett tested a sample from one of the jars found in the residence, and it tested positive for methamphetamine.

At trial, Matchett was certified as an expert and testified at great length regarding how common household items can be used to manufacture methamphetamine. Matchett also listed some of the items he found in Bryan's home that are used to make methamphetamine, including filters, a casserole dish containing ephedrine residue, antihistamine tablets, and antifreeze.

Bryan, who also testified at trial, claimed that he had not manufactured methamphetamine and that he was unaware of many of the items found in his house that are associated with making methamphetamine. However, he admitted that he had used methamphetamine in the past. Bryan's ex-wife testified that she had smoked methamphetamine with Bryan and that, several months earlier, she had manufactured methamphetamine at Bryan's house. Wasserman also testified and said that she obtained methamphetamine from Bryan. Based upon this and other evidence, the jury found Bryan guilty of manufacturing methamphetamine, possessing methamphetamine with intent to distribute, and possessing methamphetamine.[3]

According to Bryan, the evidence was insufficient to support the jury's finding of guilt because the circumstantial evidence of his guilt is refuted by the testimony of other witnesses. Although Bryan's argument is not entirely clear, he seems to suggest that any methamphetamine was manufactured by someone else.

---

[3] The record shows that Wasserman also was charged with one count of possessing methamphetamine, to which she pleaded guilty.

It is true that "[m]erely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime."[4] Here, however, more than just the contraband on the premises linked Bryan to the crimes. First, the evidence was found in a residence that belonged to Bryan. Second, two witnesses testified that they had smoked methamphetamine with Bryan, and Wasserman testified that she obtained the drug from him. Third, Bryan tested positive for using methamphetamine. And although Bryan's ex-wife testified that she had manufactured methamphetamine in the house, she claimed the last time she had done so was in May 2002. Given the evidence that the manufacture of methamphetamine was ongoing in November 2002, the jury was authorized to conclude beyond a reasonable doubt that Bryan was responsible for the operation.[5]

Bryan also argues that the evidence was insufficient because much of the evidence consisted of common household items. However, the fact that officers also found methamphetamine eviscerates this argument.

2. Bryan contends the trial court erred in denying his motion to suppress. "When reviewing the denial of a motion to suppress, we construe the evidence presented both at the suppression hearing and at trial in a light favorable to upholding the trial court's findings and judgment."[6]

At the suppression hearing, Rann testified that in August 2002, a "concerned citizen" informed him that Bryan and his ex-wife were manufacturing methamphetamine at Bryan's house. And on November 21, 2002, Rann received a phone call from an Auto Zone employee stating that a male driving a Toyota was "buying regular amounts of chemicals used in the manufacture of methamphetamine." The employee provided the tag number for the car, which belonged to Bryan.

Based on this information, Rann and three other officers went to Bryan's residence to perform a "knock and talk." While Rann knocked on the door, Grossman and another officer walked around the house to the back door. After Bryan opened the door in response to Rann's knock, Rann identified himself and asked to speak with Bryan about an investigation. According to Rann, Bryan "stepped out of the way and said sure and . . . we stepped inside the front door of the residence."

---

[4] (Punctuation omitted.) *Allen v. State*, 208 Ga. App. 854 (1) (432 SE2d 600) (1993).

[5] See id.

[6] *Kinder v. State*, 269 Ga. App. 99 (603 SE2d 496) (2004).

The officers remained near the front door while Rann questioned Bryan about the existence of a methamphetamine lab in the house. Bryan denied knowledge of any such lab. But Rann was curious about a chemical odor, and he asked Grossman, who has experience investigating methamphetamine labs, to come to the front of the house. Grossman immediately identified the smell as coming from the manufacture of methamphetamine. Grossman also could see from his vantage point at the door the liquid-filled Mason jars and car chemicals on the dining room table. Grossman then told Bryan "to cut the sh-t" and tell him "where's the meth lab." At that point, Bryan told the officers it was in the back of the house. Grossman then walked to the back of the house and discovered items consistent with the manufacture of methamphetamine.

Bryan moved to suppress the evidence subsequently found in the house, arguing, inter alia, that the officers entered the home without consent and then searched the house without a warrant. The trial court denied the motion, finding that Bryan voluntarily consented to allow the officers into the house, at which point the smell of the methamphetamine lab was apparent.

Again, Bryan's argument on appeal is not entirely clear. It seems he takes issue with the quality of the information supplied by the concerned citizen and the Auto Zone employee. However, the information was not used to obtain a warrant, but merely prompted officers to go to Bryan's house, where Bryan then invited them into his home. And "[k]nocking on the outer door of [a] residence for the purpose of investigating a reported crime is not violative of the Fourth Amendment."[7]

Bryan also asserts that he did not invite the officers into his home. However, whether Bryan voluntarily consented to the officers' entry is a question for the factfinder.[8] Here, the record shows that when Rann asked Bryan if he could talk to him about an investigation, Bryan stepped back into the house, which Rann interpreted as an invitation to enter. According to Rann, after Rann stepped inside the front door, Bryan never asked him to leave. Moreover, Rann never proceeded past the front of the house. Although it would be preferable for law enforcement officers to expressly ask for permission to enter a residence, the trial court was authorized to find that Bryan's conduct amounted to a tacit invitation to enter.[9] Under these circum-

---

[7] *Goddard v. State*, 244 Ga. App. 730, 733 (1) (536 SE2d 160) (2000).

[8] See *Pollard v. State*, 265 Ga. App. 749, 751-752 (2) (595 SE2d 574) (2004).

[9] See *Allen v. State*, 172 Ga. App. 663, 666 (2) (324 SE2d 521) (1984) (defendant's conduct amounted to tacit consent to stay and answer questions); *Traylor v. State*, 165 Ga. App. 226, 227 (1) (299 SE2d 911) (1983) (defendant's father tacitly consented to sheriff taking evidence from carport).

stances, the trial court did not err in denying Bryan's motion to suppress.[10]

3. According to Bryan, the trial court erred in permitting the State to introduce "irrelevant and prejudicial testimony of drug use." Specifically, Bryan points to his ex-wife's testimony in which she talked about her drug use and her manufacturing of methamphetamine.

Bryan asserts that this testimony amounted to improper character evidence in violation of OCGA § 24-9-20 (b), which provides, in pertinent part, that

> [i]f a defendant testifies, he shall be sworn as any other witness and may be examined and cross-examined as any other witness, except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue.

By its express terms, this Code section applies to a *defendant's* testimony. Thus, we fail to see how it applies to testimony of another witness about her own drug use, and Bryan provides no cogent argument as to how OCGA § 24-9-20 (b) applies.

Bryan also contends that the trial court erred in permitting the State to question Wasserman about his use of methamphetamine. Again, we fail to see how this testimony comes within the ambit of OCGA § 24-9-20 (b). Moreover, this testimony is cumulative, as Bryan also testified that he had used methamphetamine in the past.[11] It follows that this claim of error presents no basis for reversal.[12]

4. Bryan also alleges that the trial court erred in failing to merge the three offenses for which he was convicted. We agree.

"Offenses may merge either as a matter of law or as a matter of fact."[13] The offenses here do not merge as a matter of law.[14] However, the offenses nonetheless merge as a matter of fact. "In determining

---

[10] On appeal, Bryan does not argue that Rann exceeded his authority by walking to the back of the house in search of the methamphetamine laboratory. Arguably, exigent circumstances justified Rann's conduct. See *Land v. State of Ga.*, 265 Ga. App. 859, 861-862 (1) (595 SE2d 540) (2004).

[11] See *Shelton v. State*, 251 Ga. App. 34, 38 (2) (553 SE2d 358) (2001).

[12] See id.

[13] *McMillian v. State*, 263 Ga. App. 782, 786 (4) (589 SE2d 335) (2003).

[14] See *Hunt v. State*, 222 Ga. App. 66, 69 (2) (473 SE2d 157) (1996) (manufacture of marijuana and possession of marijuana do not merge as a matter of law); *Bowens v. State*, 171 Ga. App. 364, 365 (1) (320 SE2d 189) (1984) (possession of contraband does not merge as a matter of law with possession with intent to distribute).

whether multiple offenses merge, the key question is whether the different offenses are proven with the same facts."[15] Here, the indictment alleges in three counts that on or about November 22, 2002, Bryan manufactured, "possess[ed] and [had] under his control," and "possess[ed] with intent to distribute" methamphetamine. Based upon this language, it is clear that the indictment references the methamphetamine found at Bryan's residence on November 22, 2002. And there was only one Mason jar of liquid that tested positive for methamphetamine.[16] Under these circumstances, the offenses merged, and the trial court erred in sentencing Bryan for all three offenses.[17] We thus remand the case to the trial court for resentencing.[18]

5. Finally, Bryan alleges that he received ineffective assistance of trial counsel. On appeal, Bryan has new counsel and it appears that this is his first opportunity to raise his ineffective assistance claim. Accordingly, we remand the case to the trial court for a hearing on Bryan's claim.[19]

*Judgment affirmed and case remanded with direction. Eldridge and Adams, JJ., concur.*

ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, the State asks us to reconsider whether the possession of methamphetamine charge merged with the possession with intent to distribute and manufacturing charges.[20] The State vehemently argues that the possession charge should *not* have merged because it was based on the methamphetamine in Bryan's system rather than the contraband found in the Mason jar. According to the State, the language of the indictment alleging that Bryan "possessed" and "controlled" the methamphetamine encompasses the possession and control of the substance in a person's body.

---

[15] *Gooch v. State*, 249 Ga. App. 643, 648 (5) (549 SE2d 724) (2001).

[16] On appeal, the State argues that the methamphetamine in Bryan's system provided the basis for the possession charge. However, this argument is belied by the indictment, which references methamphetamine under Bryan's control rather than in his system. The State also argues that the evidence that Bryan gave his ex-wife and Wasserman methamphetamine in the past proves possession with intent to distribute. However, the indictment charged Bryan with possession with intent to distribute on or about November 22, 2002, and there is no evidence Bryan gave either woman methamphetamine on this date.

[17] See id.

[18] See id.

[19] See *Shamsuddeen v. State*, 255 Ga. App. 326, 329 (4) (565 SE2d 544) (2002).

[20] The State does not challenge our ruling that the possession with intent to distribute charge and manufacturing charge merged.

In other words, the State contends that Bryan "possessed" an additional amount of methamphetamine that was detected in his system via the positive urine test.

We find the State's argument unpersuasive. This Court has held that a positive drug test provides circumstantial evidence of possession, not direct evidence.[21] This is so because such positive test establishes the presence of drug metabolites rather than the drug itself.[22] Here, Bryan was alleged to have possessed methamphetamine, and a jar of methamphetamine was found in his house. Under these circumstances, the positive drug screen provides circumstantial evidence linking Bryan to the jar of methamphetamine by undermining any argument he may have made that the contraband belonged to someone else. It does not support a separate charge given that the State presented no evidence that the methamphetamine in Bryan's system was anything other than the substance he manufactured or distributed.[23] Thus, the offenses merged, and the trial court erred in concluding otherwise.

*Motion for reconsideration denied.*

DECIDED SEPTEMBER 23, 2004 —
RECONSIDERATION DENIED DECEMBER 15, 2004.

*Michael A. Corbin*, for appellant.
*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellee.

---

[21] See *Cargile v. State*, 261 Ga. App. 319, 320 (1) (582 SE2d 473) (2003) (marijuana); *Drake v. State*, 238 Ga. App. 584, 587 (2) (519 SE2d 692) (1999) (cocaine).

[22] See id.

[23] We do not reach the issue of whether evidence of a distinctly different drug in the system would support a separate possession charge.