## A05A1345. KIRBY v. THE STATE.
### (620 SE2d 459)

RUFFIN, Chief Judge.

A jury found Perry Kirby guilty of manufacturing methamphetamine, possessing methamphetamine, possessing tools for the commission of a crime, and ingesting methamphetamine. In his sole enumeration of error on appeal, Kirby challenges the sufficiency of the evidence. As the evidence was sufficient to sustain Kirby's convictions, we affirm.

On appeal from a criminal conviction, Kirby is no longer presumed innocent, and we construe the evidence in a light most favorable to the jury's verdict.[1] We neither weigh the evidence nor determine witness credibility.[2] "Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[3]

Viewed in this manner, the evidence shows that on the night of February 3, 2003, Deputy Mike Shinall received a tip from a confidential informant that methamphetamine was being manufactured at Kirby's residence. Shinall drove to the house and walked to the door. As he approached the house, Shinall looked through the kitchen window, and he saw a man other than Kirby working near the sink. Shinall knocked on the door, and Kirby opened it. According to Shinall, he immediately noticed "a very strong" chemical smell, which he knew to be from the manufacture of methamphetamine.

Shinall then handcuffed the seven occupants of the house, including Kirby, and escorted them from the house. A subsequent search of the house revealed items used in manufacturing methamphetamine in most rooms of the house, including: glass jars containing suspected methamphetamine, scales, acetone, pH testing equipment, and plastic tubing in the kitchen; and iodine, acid, digital

---

[1] See *Bryan v. State*, 271 Ga. App. 60 (1) (608 SE2d 648) (2004).

[2] See id.

[3] *Griffin v. State*, 266 Ga. App. 50 (1) (596 SE2d 405) (2004).

scales, more glass jars, and plastic containers containing suspected methamphetamine in the living room. A sample taken from a jar in the kitchen tested positive for methamphetamine.

Kirby and the other individuals present were arrested and charged with multiple offenses, including manufacturing methamphetamine, possessing methamphetamine, possessing tools for the commission of a crime, and ingesting methamphetamine.

At trial, Kirby took the stand and testified that he rented a room in his house to Amelia Perkins. According to Kirby, Perkins invited people over to the house the night the police arrived. Kirby claimed that he was in bed, asleep, when Shinall knocked at the door. Kirby testified that when he opened his bedroom door, he smelled the methamphetamine and saw the "lab" in the kitchen. Kirby maintains that he was not involved in the manufacturing of the drug, although he acknowledged at trial that he had ingested methamphetamine the day before, which explained the methamphetamine in his system.

On appeal, Kirby contends that the evidence presented was insufficient to sustain his convictions for manufacturing methamphetamine, possessing methamphetamine, and possessing tools for the commission of a crime.[4] According to Kirby, his unrebutted testimony showed that he was asleep when the methamphetamine was being manufactured. Kirby also argues that Shinall, the only witness to the manufacturing, never saw him near the methamphetamine.[5] Thus, Kirby asserts, the evidence shows only that he was present at the crime rather than a participant and that his conviction cannot stand.

A person who owns or leases premises is presumed to be in control and possession of any contraband found therein.[6] Although this presumption may be rebutted, whether the presumption has been rebutted is a question for the jury.[7] Here, the evidence shows that Kirby leased the house in which the manufacturing was taking place. The record also demonstrates that the manufacturing operation, which was spread throughout the house, created a strong chemical smell that was immediately apparent upon entering the home. Moreover, Kirby tested positive for methamphetamine in his system, which circumstantially links him to the manufacturing process and undermines his contention that he was unaware of the

---

[4] Kirby does not challenge his conviction for possessing methamphetamine by ingesting it.

[5] In its brief, the State suggests that Shinall saw Kirby standing in the kitchen while the methamphetamine was being manufactured. However, careful review of the record makes clear that Shinall did not see Kirby until after he knocked on the door.

[6] See *Wilkerson v. State*, 269 Ga. App. 190, 191 (2) (603 SE2d 728) (2004); *Hill v. State*, 253 Ga. App. 658, 659 (1) (560 SE2d 88) (2002).

[7] See id.

activity.[8] Under these circumstances, the jury was authorized to conclude that Kirby was a party to the widespread manufacturing process that was taking place in his house.[9] It follows that the evidence was sufficient to sustain Kirby's convictions.[10]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED AUGUST 24, 2005.

*Kelley A. Dial,* for appellant.
*T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney,* for appellee.

---

[8] See *Blaylock v. State*, 242 Ga. App. 195, 197 (529 SE2d 203) (2000) ("[test] results showing the presence of cocaine in [a] defendant's system [are] 'admissible as part of the res gestae and as circumstantial evidence that [the defendant] was involved in drug activity' ").

[9] See *Meridy v. State*, 265 Ga. App. 440, 441-442 (1) (594 SE2d 378) (2004) ("A person may be convicted as a party to a crime if the evidence shows he directly committed the crime, intentionally aided or abetted the commission of the crime or intentionally advised, encouraged, hired, counseled or procured another to commit the crime."). Thus, even if Kirby did not actively participate in the manufacturing process, he may nonetheless be found guilty for aiding in the manufacturing by knowingly providing the location.

[10] See *Hill,* supra.