## A05A1299. MITCHELL v. THE STATE.
### (625 SE2d 487)

BERNES, Judge.

A Richmond County grand jury indicted James David Mitchell of a single count of felony murder (OCGA § 16-5-1 (c)) alleging that on October 22, 2001, while in the commission of the felony of distributing, dispensing, and administering a controlled substance he caused the death of another by injecting him with oxycodone hydrochlorate (OxyContin). Following a bench trial, Mitchell was convicted of the lesser included offense of voluntary manslaughter. OCGA § 16-5-2 (a). Mitchell appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence. He contends there was insufficient evidence showing that he acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation." For the reasons set forth below, we reverse.

Viewed in the light most favorable to the verdict, *Singleton v. State*, 231 Ga. App. 694 (1) (500 SE2d 411) (1998), the evidence shows that on October 21, 2001, a Richmond County sheriff's deputy responded to a call from an Augusta apartment placed by Catherine Wilkinson regarding a white male whom she described as unresponsive. When the deputy arrived at the apartment, he found the victim lying on the floor, vomiting and breathing shallowly. Also present were Wilkinson and her boyfriend, Mitchell. An ambulance was summoned which transported the victim to the hospital where he was pronounced dead after suffering cardiac arrest. The death certificate listed the cause of death as acute pulmonary edema severe, secondary to OxyContin toxicity.

Mitchell and Wilkinson first told the responding deputy that the victim "just passed out." Mitchell repeated this version of events in a written statement he gave the deputy: "We were all hanging out and [the victim] passed out. I figured he was exhausted [sic]. . . ." When a sheriff's department narcotics investigator arrived at the scene and asked whether the victim had taken any drugs, Mitchell and Wilkinson told the investigator that the victim had injected OxyContin. After the investigator asked for the needle the victim used, Wilkinson showed him the needle in a dumpster outside the apartment.

Later that afternoon, Mitchell gave the investigator a third statement at the police station. Mitchell admitted that prior to the victim's collapse, he, Wilkinson, and the victim had been snorting crushed OxyContin; that the victim demanded that Mitchell inject him with the drug intravenously; that Mitchell protested,[1] but when the victim "got to the point where he was belligerent and [his] speech was slurred" and "got obnoxious and rude," [Mitchell] "went ahead and did it. . . . [Mitchell] cooked [the pill] up, . . . [and] injected him[ ]."

Samples taken from the victim's body at the time of the autopsy showed that the victim had lethal levels of OxyContin in his blood in combination with alprazolam (Xanax), a substance which enhanced the toxicity of the OxyContin.

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

OCGA § 16-5-2 (a). Mitchell contends there was no evidence that he intended to kill the victim or that he acted "as the result of a sudden, violent, and irresistible passion resulting from serious provocation." We agree that there was insufficient evidence of serious provocation. There is no evidence that the victim made any threat, actual or implied, or that the victim engaged in any provocative conduct. "[W]ords alone, regardless of the degree of their insulting nature, will not in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter, where the killing is done solely on account of the indignation aroused by the use of opprobrious words." (Citation, punctuation and emphasis omitted.) *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982). The trial court's verdict, finding Mitchell guilty of the lesser included offense of voluntary manslaughter, was not authorized by the evidence at trial.

In light of our conclusion that there was insufficient evidence to support Mitchell's original conviction for voluntary manslaughter, we conclude that retrial of Mitchell for the lesser included offense of "involuntary manslaughter in the commission of an unlawful act" (OCGA § 16-5-3 (a)) — with the underlying act being reckless conduct

---

[1] Mitchell stated: "I mean I have told him and anybody else . . . 'Don't ever try it.' "

—— is barred by statutory principles of procedural double jeopardy. See OCGA § 16-1-6; *Prater v. State*, 273 Ga. 477, 480-482 (4) (545 SE2d 864) (2001).[2]

Under these circumstances, we are constrained to reverse the judgment of conviction.

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED DECEMBER 16, 2005.

*Zell & Zell, Glenn Zell*, for appellant.

*Daniel J. Craig, District Attorney, Michael S. Carlson, Madonna M. Little, Assistant District Attorneys*, for appellee.

---

[2] While the evidence would have supported a conviction for the lesser included offense of involuntary manslaughter, we are precluded from directing entry of a judgment for that offense because, inter alia, the guilty verdict on voluntary manslaughter here did not specifically or necessarily include the finding of reckless conduct needed to sustain an involuntary manslaughter conviction. Compare *Dorsey v. State*, 259 Ga. App. 254, 257 (576 SE2d 637) (2003); *Hill v. State*, 253 Ga. App. 658, 662 (560 SE2d 88) (2002); *Clark v. State*, 245 Ga. App. 267, 269-270 (537 SE2d 742) (2000); *Anderson v. State*, 225 Ga. App. 727, 729 (484 SE2d 783) (1997).