## A99A0288. DRAKE v. THE STATE.
### (519 SE2d 692)

BARNES, Judge.

Following his indictment for rape, incest, and child molestation, Tivoli Drake was tried before a jury and found guilty of incest and child molestation. The State withdrew the rape charge before trial because the victim would not cooperate. Drake appeals, asserting the trial court made erroneous evidentiary rulings, improperly failed to excuse one juror for cause, and excused another for cause unnecessarily. Drake also contends there was insufficient evidence of venue, incest, and child molestation to support his convictions. For reasons that follow, we affirm.

The evidence at trial showed that the 13-year-old victim became pregnant sometime before July 1994. When her mother, Gloria Drake, noticed signs that she was pregnant and inquired, the victim told her mother she had been raped at knife point. On March 1, 1995, Gloria Drake saw the appellant, who was her husband and the victim's stepfather, leaving the victim's bedroom around 1:00 a.m. When she asked Drake why he was in her daughter's bedroom, he confessed he was the father of the victim's baby and told her that it had happened when she got in bed with him. He did not tell her when or where this happened.

Later that afternoon, Gloria Drake met with a City of Decatur Police Department investigator, Kim Tesalona, and told her what she had learned in an audio-taped statement. Gloria Drake also told Tesalona that her daughter was eight months pregnant. The victim gave birth to a son on March 13, 1995, 12 days after her mother's meeting with Tesalona.

After the interview, Gloria Drake asked Tesalona to drive her home because she was afraid of Drake. After determining Drake was not at the home, Tesalona asked for and received permission to talk with the victim alone. The victim explained to Tesalona "that she had told her mother that the father of her baby was her stepdad, Tivoli Drake." After learning this information, Tesalona obtained warrants for the appellant's arrest from the DeKalb County Magistrate Court.

Five days after her interview with Tesalona, Gloria Drake called Tesalona and told her she wanted to drop all of the charges against

Drake because there had been a misunderstanding.[1] Gloria Drake explained the victim had meant to say that Drake would be like a father to her child. In response to this information, Tesalona interviewed the victim again and the victim told her that she was raped at Glen Lake Park during an end-of-the-year picnic organized by Renfroe Middle School.

When the appellant was located and arrested two years later, the victim refused to voluntarily provide blood samples from herself and her child for DNA testing. Tesalona subsequently obtained a search warrant to obtain blood samples from the victim, her child, and the appellant. A paternity expert testified that laboratory testing showed a 99.92 percent probability that the appellant was the father of the victim's child.

At trial, the victim testified that she became pregnant in Fulton County at the home of Drake's grandmother. She admitted she was not raped and that the appellant was the father of her child, but denied he had sexual intercourse with her. According to the victim, she asked the appellant to ejaculate into a turkey baster when she was helping him straighten up his grandmother's home. The appellant went into the bathroom alone and returned the turkey baster to her with semen inside of it. The victim testified she then went into the bathroom alone and inserted it into her body.

The victim further testified that she became pregnant before July 1994 and that she lived on Third Avenue in Decatur, Georgia in July 1994 with her mother and stepsister. She denied that Drake lived with them at that time, but acknowledged that he would visit "every now and then."

Drake testified that he never lived with the victim and her mother on Third Avenue in Decatur, but admitted he would stay there occasionally in 1994 and 1995. He testified that his permanent residence was his grandmother's home in Fulton County and this is the address on his driver's license. He admitted that he was the father of the victim's child, but denied having sexual relations with her. Like the victim, he claimed she became pregnant in June 1994 through artificial insemination with a turkey baster at the home he shared with his grandmother.

The victim's mother testified and denied telling Tesalona that she had learned Drake was the father of the victim's baby. She further testified that she separated from Drake in 1993 and that their relationship was "kind of off and on" after that time. She admitted Drake would sometimes spend the night at her home in DeKalb

---

[1] At the time of Gloria Drake's phone call, the police had not yet arrested Drake because they were unable to locate him.

County, but denied ever seeing him near the victim's bedroom in the middle of the night other than on March 1, 1995. She testified that when Drake spent the night, he stayed in her bedroom, not a separate bedroom. Finally, she stated that Drake and the victim were alone together while painting his grandmother's home in Fulton County during a two-week period beginning in the last week of May 1994.

The indictment against Drake alleges that he committed incest and child molestation in DeKalb County by having "sexual intercourse" with the victim. He was tried in DeKalb County.

1. We reject Drake's contention that the evidence was insufficient to support the verdict against him.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Drake] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The jury verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Kovacs v. State*, 227 Ga. App. 870 (1) (490 SE2d 539) (1997). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"The jury is the sole and exclusive judge of the credibility of witnesses, and after verdict, a reviewing court must construe the evidence in favor of the judgment rendered." *Harris v. State*, 155 Ga. App. 530 (1) (271 SE2d 668) (1980). A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it. *Storey v. State*, 205 Ga. App. 610, 611 (1) (422 SE2d 879) (1992). Such conflicts include situations where a witness testifies as to facts that are "inherently at variance with the common knowledge and experience of mankind." *Watson v. State*, 13 Ga. App. 181, 182 (2) (78 SE 1014) (1913).

In this case, it was undisputed that the victim gave birth to Drake's child. There was also evidence that Drake admitted this happened when the victim got into bed with him. Common sense authorizes a jury to conclude from this circumstantial evidence that the victim's child was conceived by an act of sexual intercourse between Drake and his stepdaughter. The jury was also entitled to disbelieve Drake's implausible "turkey baster" defense.

2. Drake contends the State presented insufficient evidence of venue in DeKalb County. The State asserts that OCGA § 17-2-2 (h) provides a basis for venue to lie in DeKalb County. This section pro-

vides: *"Crime in more than one county.* If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."

It is clear from the language of this statute that it applies only when "it cannot be determined in what county a crime was committed." Thus, we must first determine whether this case fulfills this prerequisite. Although no Georgia court has previously defined the scope of this language, the Supreme Court has held that the statute's purpose "is to provide for establishment of venue in situations in which there is either some doubt as to which county was the scene of the crime or where the crime in fact occurred in more than one county." *Bundren v. State,* 247 Ga. 180 (1) (274 SE2d 455) (1981).

Accordingly, we have previously applied OCGA § 17-2-2 (h) in cases where the victim cannot identify in which county a crime was committed. For example, in *Moss v. State,* 160 Ga. App. 42 (285 SE2d 776) (1981), the rape victim testified she did not know in which county she was raped because her attacker drove her in an automobile through more than one county. Another typical example is a murder case in which the victim disappears in one county and the body is discovered in another county. See, e.g., *Nelson v. State,* 262 Ga. 763, 764-765 (2) (426 SE2d 357) (1993).

Georgia courts have also applied this statute in cases involving so-called "victimless" crimes, such as drug possession. See *Dennis v. State,* 263 Ga. 257, 259 (4) (430 SE2d 742) (1993); *Green v. State,* 260 Ga. 625, 626 (1) (398 SE2d 360) (1990). In these cases, cocaine possession charges resulted from a test showing cocaine metabolites in the defendant's urine, which is circumstantial evidence of cocaine possession. However, the State presented no direct evidence of where the defendant possessed the cocaine which resulted in these cocaine metabolites. The Supreme Court applied OCGA § 17-2-2 (h) and found that venue was appropriate in the county where the defendant was present immediately before being asked to provide a urine sample.

The evidence in this case is comparable to the evidence in the cocaine possession cases. The DNA testing and Drake's admission of fatherhood are circumstantial evidence that he had sexual intercourse with the victim. There is also no direct evidence showing where the alleged criminal conduct — intercourse — took place.[2] Based upon the Supreme Court's application of OCGA § 17-2-2 (h) in

---

[2] Testimony by Drake and the victim that she was artificially inseminated with a turkey baster in Fulton County does not show where the criminal conduct, intercourse, was committed.

the analogous cocaine possession cases, we find it can also be applied in this case to support venue in DeKalb County. In order to do so, however, the evidence must show "beyond a reasonable doubt" that the crimes with which Drake was charged "might have been committed" in DeKalb County.

Our opinion in *McGarity v. State*, 212 Ga. App. 17, 21-22 (6) (440 SE2d 695) (1994) is instructive on this issue. In *McGarity*, another child molestation case, we found sufficient circumstantial proof of venue in the county where the victim lived and was accessible to the defendant. In this case, the victim lived in DeKalb County and the defendant, her stepfather, would stay overnight. This evidence supports an inference that the defendant had access to the victim in DeKalb County and shows beyond a reasonable doubt that he might have had intercourse with her there. Consequently, we find sufficient evidence to support venue in DeKalb County pursuant to OCGA § 17-2-2 (h).

3. Drake asserts the trial court erred in granting the State's motion to strike a juror for cause and failing to grant his motion to strike another juror for cause. However, Drake specifically requested in his notice of appeal that the transcript of the voir dire of the jury be omitted from the record. Without this portion of the transcript, the record is incomplete, and we cannot properly consider Drake's complaints regarding the composition of the jury. See *Hines v. State*, 208 Ga. App. 470 (1) (431 SE2d 137) (1993). Moreover, based upon the colloquy between the judge and the attorneys included in the record, it appears that the judge did not abuse his discretion. See *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998).

4. Drake contends that the trial court erred by preventing him from introducing evidence that Investigator Tesalona failed to transport the victim's child in a child safety seat when he was taken for paternity testing. Drake argues that this evidence was relevant to show why the victim and her mother did not cooperate with the police and the district attorneys during their investigation.

"[T]he admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985).

Pretermitting the issue of whether Drake made a sufficient proffer that Tesalona would have testified, if asked, that a safety seat was not used, the trial court did not abuse its discretion when it excluded this evidence. The record shows that the victim and her mother became uncooperative with the State as early as March 1995, long before paternity testing was commenced in January 1997. Thus, the record does not support Drake's claim that they became hostile

after this alleged incident.

5. Drake contends the trial court erred when it allowed the State to cross-examine him about his feelings when he discovered the victim was pregnant with his child. Specifically, Drake contends the probative value of this evidence was outweighed by its prejudicial nature. In order to obtain a reversal, an appellant must demonstrate harm as well as error. *Davis v. State*, 266 Ga. 801, 804 (9) (471 SE2d 191) (1996). Since it is highly probable this evidence did not contribute to the jury's determination of Drake's guilt, no harm resulted from its admission. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

6. In his remaining enumeration of error, Drake asserts the trial court erred by allowing the jury to hear Gloria Drake's testimony that, on the morning after she found Drake leaving the victim's bedroom, Drake pushed her out of her chair onto the floor while she was looking up telephone numbers to report the molestation. Drake argues that this incident constituted a separate bad act that impermissibly placed his character into evidence. The State argues this evidence was properly admitted to explain why the victim and her mother were uncooperative with the State. We agree. See *Newberry v. State*, 260 Ga. App. 416, 418-419 (3) (395 SE2d 813) (1990); *Price v. State*, 269 Ga. 373, 374-375 (2) (497 SE2d 797) (1998).

*Judgment affirmed. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 21, 1999.

*William T. Hankins III*, for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.