## A00A0634. BATTLE v. THE STATE.
### (536 SE2d 273)

RUFFIN, Judge.

Bobby Battle was convicted of possession of marijuana and possession of marijuana with intent to distribute, each count relating to a separate incident.[1] He appeals, contending that the evidence was insufficient to support the possession with intent to distribute conviction, and that the trial court erred in responding to a jury question. For reasons discussed below, we affirm.

1. On February 9, 1997, Sergeant Arvo Bowen of the Covington Police Department stopped Battle for various traffic offenses. Battle was driving an Oldsmobile Cutlass, and there were two passengers, Tyson Bell and Stan Price. After Battle got out of the car, Bowen saw the front seat passenger, Bell, lean over in the seat. Another officer,

---

[1] Battle was also convicted of certain other offenses, but they are not at issue in this appeal.

Jerry Lee Roberts, later searched the car and found ten plastic bags of marijuana in the pocket of a coat on the driver's seat. Battle admitted at trial that the coat was his but denied any knowledge of the marijuana. Battle introduced evidence that Bell pled guilty in July 1998 to possession of marijuana with intent to distribute.

On May 9, 1997, Battle was again stopped by police, this time for a noise violation. After Battle failed to produce a driver's license, Officer Wayne Digby asked for Battle's permission to search the car, a Buick Regal. Although Battle initially refused, he ultimately consented to the search. Digby found a partially smoked marijuana cigarette in the open ashtray. Digby then placed Battle under arrest for possession of less than an ounce of marijuana. Upon further search, Digby found a bluish-green bag under the hood of the car, between the headlight and the battery. Digby described the bag as a "fresh bag" with "no dust or anything on it." Digby opened the bag and found that it contained 27 individually wrapped bags of marijuana.

Battle was charged with several offenses relating to the two incidents, including two counts of possession of marijuana with intent to distribute. At trial, he denied having any knowledge of the marijuana on either occasion. With respect to the February 9 incident, Battle claimed that he had borrowed the Oldsmobile from Tim Bell, Tyson Bell's brother. Although he admitted that the marijuana was found in his coat, he denied any knowledge of the drugs.

With respect to the May 9 incident, Battle claimed that he had borrowed the Buick from Anthony Bell that morning in order to go to a job interview. According to Battle, Bell asked him to take the car to his uncle's car shop for some repairs. Battle stated that he arrived at the repair shop at 8:00 a.m. and left at 2:00 p.m., and that he was stopped by the police while driving from the repair shop to the interview. Although Battle stated that he borrowed the car the morning of the arrest, Anthony Bell testified that he loaned Battle the car the night before. He said he asked Battle to take the car to the transmission shop because he had to work the next morning. Bell denied that there was any marijuana in the car when he loaned it to Battle. Bell admitted that he had been convicted in 1995 of conspiracy to traffic in cocaine.

Regarding the February 9 incident, Battle was acquitted of possession of marijuana with intent to distribute but convicted of felony possession of marijuana. Regarding the May 9 incident, Battle was convicted of possession with the intent to distribute.[2] On appeal, he challenges the sufficiency of the evidence only with respect to the

---

[2] The jury also found him guilty of felony possession of marijuana, but the trial court did not sentence him on this charge, apparently merging it with the other conviction.

May 9 incident. He argues that the evidence against him was circumstantial, and that "[o]ne reasonable interpretation of the evidence is that the car's owner, a drug dealer, used [Battle] as an unwitting patsy to haul drugs for him. The mechanic placed the drugs under the hood for delivery to the car's owner."

As we stated in *Henderson v. State*,

> [i]n the absence of any circumstances to the contrary, a presumption arises from proof of ownership and control of . . . an automobile . . . that the owner is in control and possession of contraband found therein. This rule is equally applicable to an automobile in which the accused is only the driver or in possession of the vehicle. As to automobiles, [however,] the rule does not apply where there is evidence in the case that the defendant has not been in possession of the vehicle for a period of time prior to the discovery of the contraband or that others have had access [to] it. In other words, merely finding contraband in a car occupied by defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime. If the only evidence of possession of contraband found in an automobile is that the defendant is the owner, the driver, or is in possession of the vehicle, and there is evidence of prior use of the vehicle by other parties in the recent past, or equal access to the accessible portions of the vehicle by other parties, then the prior possession or equal access rule would demand an acquittal. However, if there is additional evidence of possession of contraband by the accused — either circumstantial or direct, other than mere ownership, use or possession of the vehicle, then an issue is made for the factfinder.[3]

Here, there was evidence that Anthony Bell and, perhaps, the mechanic who allegedly worked on the car may have had access to the car in the period before Battle's arrest. However, acquittal is not necessarily demanded simply because a defendant presents evidence that others had access to the vehicle. If there is evidence allowing the jury to conclude that none of the other parties with such access placed the drugs in the vehicle, or if the jury disbelieves the defendant's claim that others in fact had such access, or if there is other evidence pointing to the defendant, the jury may conclude that the only

---

[3] (Citations, punctuation and emphasis omitted.) 191 Ga. App. 275, 276 (1) (a) (381 SE2d 423) (1989).

reasonable hypothesis is that the defendant was in possession of the drugs.[4]

As an initial matter, we note that there was significant evidence casting doubt on Battle's general credibility as well as his account of the events surrounding the May 9 incident. For example, Battle denied that he ever smoked marijuana or that he had any knowledge of the marijuana found on either occasion. But the jury apparently rejected this claim by convicting Battle of possessing marijuana on February 9, and Battle does not challenge the sufficiency of the evidence with respect to that incident. In addition, the fact that a partially smoked marijuana cigarette was found in an open ashtray in the second incident contradicts Battle's claim that he was not aware of any marijuana. Based on these contradictions, the jury could have concluded that Battle was not a credible witness, thus giving grounds for disbelieving his otherwise unsubstantiated claim that others at the repair shop had access to the car that morning.[5]

The jury also could have found that Battle's account of the events surrounding the May 9 incident was not credible. Although Battle claimed that he borrowed the car the morning of his arrest, Anthony Bell testified that he gave the car to Battle the night before. Assuming that the jury believed Bell's version, it could have determined that Battle was not being truthful and was trying to understate the length of time he had control of the car. The jury also could have focused on inconsistencies and implausibilities in Battle's account of how he spent his time before the arrest. For example, Battle testified that he delivered the car to the repair shop by 8:00 a.m. and left at 2:00 p.m. to drive straight to his job interview. The jury could have found it somewhat strange that, if Battle in fact was borrowing the car to go to an important job interview, he would have agreed to wait at a repair shop for a long and indeterminate amount of time while the car was being worked on. Moreover, Battle's account of how he spent his time while the car was allegedly being repaired was somewhat vague. When asked if he waited at the shop while they worked on the car, Battle said, "Well, no. I mean, because I walked to [a convenience store], I bought me a drink and then like I had a bag of chips and when I got back, they said that the car . . . was ready." He said that he "just stood around the, you know, the [convenience] store, you know, just there and you know, and started talking on the telephone and then I went straight back to [the repair

---

[4] See id. ("if there is additional evidence of possession of contraband by the accused — either circumstantial or direct, other than mere ownership, use or possession of the vehicle, then an issue is made for the factfinder") (punctuation omitted).

[5] See OCGA § 24-9-85 (a) ("When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury.").

shop] and [the mechanic] said it [was] ready."

Battle testified that he went straight from the repair shop to his job interview, and that he was stopped by Officer Digby while driving to the interview. He said that he made no stops along the way, "because I had the job on my mind." However, when it was pointed out that the spot where he was arrested was not on the route from the shop to the interview location, Battle stated (in response to leading questions by his own attorney) that he had driven over into a neighborhood where he could be seen by his friends "driving a sharp car." This subtle changing of his story could have led the jury to conclude that Battle was not being truthful.

Battle called no witnesses from the repair shop or the alleged employer to confirm that he had in fact taken the car in for repairs or that he had a job interview, and he presented no documentary evidence, such as a receipt, indicating that any repairs were performed.[6] Nor did Battle provide any explanation for his failure to present such evidence or call such witnesses. Given the many inconsistencies and implausibilities in his testimony, the jury could have completely disbelieved Battle's claim that anyone else had access to the car on the day of his arrest.

As discussed above, Anthony Bell was called as a defense witness and denied that there were any drugs in the automobile when he gave it to Battle. If the jury found this testimony credible, then it had a basis for concluding that he was not responsible for the drugs. We note in this regard that witness credibility is a matter for the jury, and the jury may choose to believe part of a witness' testimony while disbelieving other parts.[7] We also note that Officer Digby testified that the bag found under the hood appeared "fresh" and did not have any dust on it, suggesting that it had recently been placed there. Under all of the circumstances, we believe the jury could have concluded that the only reasonable hypothesis was that Battle had possession of the drugs in question.

2. During deliberations, the jury sent the judge the following question: "[I]f the driver took a known drug dealer home, would this be possession of marijuana or possession of marijuana with the intent to distribute?" After discussing his response with counsel, the judge responded to the jury's question by repeating his instruction on parties to a crime. In addition, the judge illustrated this concept by discussing three different hypothetical scenarios, each involving himself and his brother, Warren:

---

[6] Anthony Bell admitted that he had no receipts showing that the car had been repaired.

[7] See *Johnson v. State*, 241 Ga. App. 448, 452 (4) (526 SE2d 903) (1999); *Drake v. State*, 238 Ga. App. 584, 586 (1) (519 SE2d 692) (1999).

> First one. . . . . If I went up to Warren and said Warren, give me a ride home because I have got some marijuana that I want to distribute in my neighborhood. Warren says okay and I get stopped on the ride home and parties to the crime, he was aiding me getting home to distribute the drugs. First scenario.
>
> Second scenario. I go Warren, I have got some marijuana on me, I don't feel good about it, how about driving me home before I get caught here. He says okay. We get into the car and get stopped halfway there. I possessed marijuana and Warren has driven me, knowing that I possessed marijuana.
>
> The third scenario. I go up to Warren and say Warren, give me a ride home. He says okay. Halfway home the police stop us, and I have got drugs on me, unknown to Warren.

After giving these illustrations, the judge repeated his charge on criminal intent and instructed the jury that mere presence at the scene of a crime or mere association with persons involved in a crime is insufficient to support a conviction unless the defendant participated in the crime.

After both the prosecutor and defense counsel indicated dissatisfaction with the recharge, the judge recalled the jurors and instructed them to disregard the three scenarios involving the judge and Warren and to concentrate on the principles of law given in the charge. The judge stated that the scenarios were intended to illustrate principles of law and not to constitute a comment on the evidence. He asked if any of the jurors were unable to "disabuse your mind of the three examples I gave you," and none of the jurors raised their hand.

On appeal, Battle argues that the judge's instruction was erroneous because it did not specifically inform the jury that, under the third scenario, Warren would not be guilty of any crime. Pretermitting whether the judge's subsequent withdrawal of the three scenarios cured any error caused by such an omission, Battle's contention is without merit. The three scenarios were not given in isolation, but in the context of further instructions on criminal intent, mere presence, and mere association. Considering the recharge as a whole, along with the original charge, the jury was clearly instructed that a defendant could not be convicted under the facts described in the third scenario.[8] Accordingly, this enumeration presents no basis for

---

[8] See *Mobley v. State*, 218 Ga. App. 739, 740-741 (2) (463 SE2d 166) (1995) (charge and recharge to be considered as a whole in determining whether recharge contained error).

reversal.[9]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 23, 2000.

*James E. Millsaps*, for appellant.
*Alan A. Cook, District Attorney, W. Kendall Wynne, Jr., Assistant District Attorney*, for appellee.

---

[9] Battle does not contend that the trial court committed any error with respect to the first two scenarios.