## A09A0736. LEFTWICH v. THE STATE.
(682 SE2d 614)

DOYLE, Judge.

A Fulton County jury found Raleigh Duane Leftwich guilty of rape,[1] kidnapping,[2] aggravated assault with intent to rape,[3] and aggravated assault with intent to rob.[4] On appeal, Leftwich argues that the trial court erred by (1) ruling that the seizure of his DNA by prison officials, which led to his arrest for these charges, did not violate his constitutional rights; (2) ruling that the statutes of limitation were properly tolled as to the kidnapping and aggravated assault charges; (3) giving an incorrect statement of law in response to a jury note; and (4) denying his motion for directed verdict on the issue of venue. For the following reasons, we affirm.

Viewing the facts in the light most favorable to the verdict,[5] on the evening of December 31, 1994, 19-year-old E. C. was abducted at gunpoint from the Lenox Square Mall parking lot. E. C. was forced

---

[1] OCGA § 16-6-1 (a) (1).
[2] OCGA § 16-5-40 (a).
[3] OCGA § 16-5-21 (a) (1). This offense merged with the offense of rape for sentencing.
[4] Id.
[5] See *Robins v. State*, 298 Ga. App. 70 (679 SE2d 92) (2009); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

into a car, blinded with a pair of gold sunglasses with painted-over lenses, and driven to an unknown location, where she was raped. The attacker demanded that E. C. give him her address, and he threatened to kill her and her family if she reported the rape. The attacker returned E. C. to Lenox Mall, and the attacker's DNA was collected from her in a rape kit. The DNA was not matched to a suspect at that time, but a genetic profile of the attacker's DNA was added to the Combined DNA Index System database ("CODIS") in 1999.

In the meantime, on May 23, 1995, Leftwich was indicted by a Gwinnett County jury on various charges unrelated to the attack on E. C. Leftwich pleaded guilty to the charges and was sentenced to 35 years, with 15 years to serve in prison, followed by 20 years probation, and his judgment of conviction was entered on April 23, 1996.

On June 30, 2004, a Gwinnett County Superior Court issued an order vacating two of Leftwich's charges, which resulted in an amended sentence of thirty years, with ten to serve. On February 11, 2005, the court sent an order to the Department of Corrections explaining that Leftwich should be placed on probation immediately because his sentence of confinement should have ended on January 2, 2005 (based on the date Leftwich originally was taken into custody for the Gwinnett County charges — January 2, 1995).

On February 18, 2005, Leftwich was released from prison on the Gwinnett crimes, and as part of his processing out of prison, a DNA sample was taken from him in accordance with OCGA § 24-4-60. A profile of Leftwich's 2005 DNA sample was developed and added to the CODIS database, and on September 26, 2005, it was matched to the DNA sample collected from E. C. after her 1994 attack.

On October 14, 2005, Leftwich was indicted for Count 1 — rape, Count 2 — aggravated assault with a deadly weapon (a handgun), Count 3 — armed robbery, Count 4 — kidnapping, and Count 5 — possession of a firearm during the commission of a felony, in connection with the 1994 attack on E. C. A superseding indictment was filed in 2007, which charged Leftwich with Count 1 — rape, Count 2 — kidnapping, Count 3 — armed robbery, Count 4 — aggravated assault with intent to rape, Count 5 — aggravated assault with intent to rob, and Count 6 — possession of a knife during the commission of a felony. The superseding indictment also added language to each of the counts, which read "[f]urther, as to count one (1) the identity of the accused was not known to the State until the year 2005 (OCGA § 17-3-2 (2)), when . . . (DNA) evidence was used to establish the identity of Raleigh Leftwich (OCGA § 17-3-1 (c.1))." Under each count of the remaining counts, instead of stating "as to count two (2)," "as to count three (3)," etc., the language simply repeated "as to count one (1)."

After trial, a Fulton County jury found Leftwich guilty of Counts 1 and 4 (which merged), Count 2, and Count 5 of the superseding indictment, while Counts 3 and 6 were dismissed. This appeal followed.

1. First, Leftwich argues that the trial court erred by ruling that the seizure of DNA evidence from him pursuant to OCGA § 24-4-60 on the day he was released from prison for the Gwinnett County crimes did not violate his Fourth, Fifth, and Fourteenth Amendment Rights. We disagree.

As an initial matter, both the Supreme Court of Georgia[6] and the Eleventh Circuit Court of Appeals[7] have held that OCGA § 24-4-60 generally does not violate the Fourth Amendment, the Georgia Constitution's search and seizure provisions, or an inmate's right to privacy under the federal or state constitutions. Leftwich, however, argues that in his case, because he should have been released from prison for the Gwinnett County charges on January 2, 2005, the State's act of taking a DNA sample from him on February 18, 2005, constituted an unreasonable search and seizure in his case, and the trial court therefore erred by not suppressing the DNA sample and the subsequent CODIS match to the 1994 DNA sample taken from E. C.

> The exclusionary rule bars the admission of evidence obtained as the result of an illegal search because it is fruit of the poisonous tree. However, evidence is not fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the [State]. Rather, the inquiry in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Thus, even if evidence would not have been discovered but for the illegal [State] conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed.[8]

Leftwich's argument is without merit. First, as this Court previously has determined, the Department of Corrections and a convict's presentence custodian are in charge of applying credit for

---

[6] See *Quarterman v. State*, 282 Ga. 383, 386 (3) (651 SE2d 32) (2007).

[7] See *Padgett v. Donald*, 401 F3d 1273, 1277-1282 (II) (11th Cir. 2005).

[8] (Punctuation and footnotes omitted.) *Baker v. State*, 277 Ga. App. 520, 523 (2) (627 SE2d 145) (2006).

time served.[9] Thus, the correct calculation of Leftwich's remaining sentence after the entry of the order vacating some of his Gwinnett County convictions was a matter for the Department of Corrections, not the trial court, and the trial court's order directing his release is not necessarily evidence that Leftwich's detention after January 2, 2005, was illegal. Additionally, although Leftwich contends that the Gwinnett County trial court's orders resulted in the immediate change in his status from incarcerated inmate to probationer, he cites no law that supports his contention, and again, because the Department of Corrections is responsible for calculation and application of terms of imprisonment, his argument that he was a probationer at the time of the search is meritless.

Moreover, the DNA sample was taken from Leftwich on February 18, 2005, rather than January 2, 2005 (the final date Leftwich argues that he was legally held in prison), simply because he was physically discharged from custody on February 18.[10] Thus, even assuming that Leftwich's detention at the time was illegal, the exclusionary rule does not apply to this case because the DNA extraction (and thereby, the CODIS match to E. C.'s attacker) was not a *result* of any illegal detention by the State.[11] Furthermore, the threat of exclusion of evidence in this case is not likely to deter future instances of the presumed illegal conduct in this case — holding an inmate beyond the end of his sentence term — because the Department of Corrections employees responsible for calculating prison terms have no stake in the outcome of future criminal prosecutions.[12]

Accordingly, because the seizure of Leftwich's DNA would have occurred regardless of any illegal search or seizure, the trial court did not err in denying the motion to suppress the DNA match.

2. (a) Leftwich argues that the trial court erred in determining that the superseding indictment served to toll the statute of

---

[9] See *Edwards v. State*, 283 Ga. App. 305, 306 (641 SE2d 193) (2007); *Smashey v. State*, 282 Ga. App. 293, 294 (638 SE2d 431) (2006).

[10] See OCGA § 24-4-60 (2003) (stating that the Code section also applies "to any person who ha[d] been convicted of a felony prior to July 1, 2000, and who currently is incarcerated in a state correctional facility in this state for such offense *but only when such a person is to be released from the state correctional facility*") (emphasis supplied).

[11] Cf. *Hudson v. Michigan*, 547 U. S. 586, 592 (III) (A) (126 SC 2159, 165 LE2d 56) (2006) (holding that the exclusionary rule did not apply to violation of the "knock and announce" rule because "exclusion may not be premised on the mere fact that a constitutional violation was a but-for cause of obtaining evidence" and, in any event, the illegal entry in that case did not lead to the discovery of contraband inside the house) (punctuation omitted).

[12] Cf. id. at 594-599 (III) (B); *Arizona v. Evans*, 514 U. S. 1, 15 (115 SC 1185, 131 LE2d 34) (1995) (holding that the exclusionary rule did not apply to evidence seized in violation of the Fourth Amendment by an officer who acted in reliance on a police record indicating the existence of an outstanding arrest warrant – a record that was later determined to be erroneous based on the clerical error of a court employee).

limitation as to Counts 2, 4, and 5 because the tolling language in those defectively referred back to Count 1, rather than the count in question. Leftwich contends that the tolling provisions were essential elements of each of the counts, which needed to be perfect in form. We disagree that the language in question constitutes a fatal flaw in Counts 2, 4, and 5.

Under OCGA § 17-3-2 (2), the period of limitation is tolled during any period in which "[t]he person committing the crime is unknown. . . ." However, "where an exception is relied upon to prevent the bar of the statute of limitation, it must be alleged and proved."[13]

In *Jenkins v. State*,[14] the Supreme Court of Georgia held that "while it is true that an exception to the statute of limitations must be pled in the indictment if the State is relying on one, the statute of limitations is not an element of the crime per se. . . ." This Court has held, however, that "although each count must be complete within itself and contain every allegation essential to constitute the crime, this rule applies to the offense rather than the form. Therefore, *one count may incorporate by reference portions of another, and the indictment is read as a whole*."[15] "The true test of the sufficiency of an indictment is not whether it could be made more certain and definite, but whether it contains the elements of the offense charged, apprises the accused of what he must be prepared to defend against, and protects against double jeopardy."[16]

Leftwich cites to *Noeske v. State*[17] for support of his argument that the wording error in Counts 2, 4, and 5 resulted in a defective indictment as to those counts. *Noeske*, however, is inapposite because the indictment did not contain the defendant's name at all, and instead, it listed the accusing officer's name as the charged individual.[18] Thus, when read as a whole, the *Noeske* indictment did not apprise that defendant of the charges against him.[19] In this case, however, Leftwich was sufficiently apprised of all the essential elements of the charges when read as a whole, including the fact that the State intended to prove that the statute of limitation for the crimes was tolled until 2005 because Leftwich's identity was un-

---

[13] (Citation omitted.) *McKeehan v. State*, 274 Ga. App. 14, 16 (2) (616 SE2d 489) (2005).

[14] (Footnote omitted.) 278 Ga. 598, 604 (1) (B) (604 SE2d 789) (2004).

[15] (Citation and punctuation omitted; emphasis supplied.) *McKeehan*, 274 Ga. App. at 18 (4).

[16] (Citation omitted.) *Hester v. State*, 283 Ga. 367, 368 (2) (659 SE2d 600) (2008).

[17] 181 Ga. App. 778 (353 SE2d 635) (1987).

[18] See id. at 779-780 (2).

[19] See id.

known until that time.[20] The superfluous language "as to count one (1)" contained in Counts 2 through 6 was not enough to confuse Leftwich about the offenses or the applicable exception to the statute of limitation, which the State intended to prove at trial.

(b) Leftwich also argues that the State was barred from proceeding against him under the superseding indictment because the original indictment was not timely filed within the statute of limitation and did not contain any language referring to the tolling of the statute of limitation pursuant to OCGA § 17-3-2 (2). Leftwich bases this argument on *Wooten v. State*, in which this Court reviewed "whether a superseding indictment, filed during the pendency of a timely original accusation and after the statute of limitation has run, is barred."[21] However, *Wooten* has no bearing on this case because that case did not involve an exception to the normal statute of limitation like OCGA § 17-3-2 (2), and thus, the superceding indictment had to meet certain requirements in order to relate back to the timely filed accusation. In this case, because the State was alleging that Leftwich's identity was unknown until 2005 when it acquired his DNA, the statute of limitation began to run at that time, and the superseding indictment was, therefore, timely filed in 2007 within the seven-year and four-year statute of limitation.[22]

3. During deliberations, the jury sent a note to the trial court asking if "an assumed clerical error in the indictment [can] nullify a statement in the indictment? Is *intent* of the Grand Jury regardless of clerical execution of the Grand Jury's charges to be considered?" The court responded, "A clerical error is not a material allegation that would need to be proven by the State beyond a reasonable doubt." Leftwich argues that the trial court's instruction in response to the note constituted an erroneous statement of the law. We disagree.

> The jury must be given an appropriate instruction as to the law on each substantive point or issue involved in the case. . . . When a given instruction fails to provide the jury with the proper guidelines for determining guilt or innocence, it is clearly harmful and erroneous as a matter of law.

---

[20] See *Hester*, 283 Ga. at 368-369 (2) ("Appellant has not shown how [he] was misled to [his] prejudice by any alleged imperfection in the indictment[,] and we can discern no prejudice in the record. Any error in failing to try [him] upon a perfect indictment was, thus, manifestly harmless.") (citation and punctuation omitted).

[21] *Wooten v. State*, 240 Ga. App. 725, 726 (2) (a) (524 SE2d 776) (1999).

[22] See *James v. State*, 274 Ga. App. 498, 502 (4) (618 SE2d 133) (2005); OCGA § 17-3-1 (b) & (c) (1994). Compare with *Wooten*, 240 Ga. App. at 726-727 (2) (a) (subsequent indictment filed after statute of limitation had run).

Consequently, the failure to inform the jury of an essential element of the crime charged is reversible error because the jury is left without appropriate guidelines for reaching its verdict.[23]

Here, the jury presumably asked about the nullifying effect of the statement "as to count one (1)," which was contained in each count of the indictment. Leftwich argues that the trial court's response misstated the law with regard to the statute of limitation in response to the jury's question; however, the trial court did not specifically discuss the statute of limitation in response to the note, the trial court did not express its opinion as to whether the statement "as to count one (1)" was, in fact, a clerical error or not, and the trial court had correctly charged the jury that the State had the burden of proving beyond a reasonable doubt that the statutes of limitation had tolled for each of the crimes because the perpetrator's identity was unknown at the time.

Moreover, given our conclusion in Division 2 that the statement "as to count one (1)" as contained in Counts 2 through 6 of the indictment was superfluous language, the trial court was correct that the clerical error itself did not have to be proven.

4. Finally, Leftwich argues that the trial court should have granted his motion for directed verdict on the charges of rape and aggravated assault with intent to rape because the State did not prove beyond a reasonable doubt that the rape occurred in Fulton County. Again, we disagree.

When a defendant challenges the sufficiency of the evidence on appeal, this Court must view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. An appellate court determines evidence sufficiency rather than weighing the evidence or determining witness credibility. The standard is whether, based on the evidence presented, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The review of the sufficiency of the evidence to support venue is no different because venue is an essential element that must be proven beyond a reasonable doubt in every criminal trial.[24]

"If in any case it cannot be determined in what county a crime

---

[23] (Citations and punctuation omitted.) *Chase v. State*, 277 Ga. 636, 639-640 (2) (592 SE2d 656) (2004).

[24] (Citation omitted.) *Melton v. State*, 282 Ga. App. 685, 685-686 (639 SE2d 411) (2006).

was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."[25] Furthermore, "venue is a question for the jury, [and] its decision will not be set aside if there is any evidence to support it."[26]

Here, the jury's determination that venue was proper in Fulton County is supported by the record, and thus, the trial court's denial of Leftwich's motion for directed verdict was not erroneous. E. C. was abducted at Lenox Square Mall, which was established to be in Fulton County. E. C. stated that the defendant originally got on northbound Interstate 85, but she had no idea where they went from there, and they drove around for about 20 minutes. She was wearing blacked-out sunglasses and could not see around her. Eventually she was taken from the vehicle into an unknown location and raped. Here, the most definite testimony regarding the location of crimes related to Lenox Mall, which was shown to be located in Fulton County, and the jury was authorized to find beyond a reasonable doubt that the rape might have occurred in Fulton County.[27] Accordingly, Leftwich's argument is without merit.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JULY 7, 2009 —
RECONSIDERATION DENIED JULY 27, 2009

*Larry D. Wolfe, Robert A. Susor*, for appellant.
*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.

---

[25] OCGA § 17-2-2 (h).

[26] (Citation and punctuation omitted.) *Davis v. State*, 203 Ga. App. 106 (416 SE2d 375) (1992).

[27] See *Hendrix v. State*, 242 Ga. App. 678, 680 (1) (530 SE2d 804) (2000) (reviewing sufficiency of venue determination under OCGA § 17-2-2 (e) and (h) when crime committed in a vehicle); *Drake v. State*, 238 Ga. App. 584, 587-588 (2) (519 SE2d 692) (1999) (holding evidence sufficient to support venue because evidence showed that defendant had access to the victim in DeKalb County, and he might have had intercourse with her there).