### A11A0783. BIZIMANA v. THE STATE.
(715 SE2d 754)

MIKELL, Judge.

Antoine Ibrahim Bizimana, convicted by a DeKalb County jury of rape, appeals from the trial court's denial of his motion for new trial, contending that the state failed to prove venue. We disagree and affirm.

The Georgia Constitution requires that "all criminal cases shall be tried in the county where the crime was committed."[1] "[V]enue is

---

[1] Ga. Const. of 1983, Art. VI, Sec. II, Par. VI.

a jurisdictional element of every crime that the State must prove beyond a reasonable doubt."[2]

> When a defendant challenges the sufficiency of the evidence on appeal, this Court must view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. An appellate court determines evidence sufficiency rather than weighing the evidence or determining witness credibility. The standard is whether, based on the evidence presented, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The review of the sufficiency of the evidence to support venue is no different because venue is an essential element that must be proven beyond a reasonable doubt in every criminal trial.[3]

So viewed, the evidence was that A. M. N., who was in her early twenties, had come to the United States as a refugee from Burundi in 2007. Leana Rubenstein, with Refugee Resettlement and Immigration Services of Atlanta, helped A. M. N. get resettled in the Valley Brook Apartments with her child, her brother, and her sister and her child. Other Burundian refugees lived at the apartment complex and A. M. N. became aware that Antoine Bizimana would drive other refugees on errands and to job interviews. A. M. N. had ridden previously with four men in Bizimana's van to a chicken company to apply for a job.

On December 8, 2007, A. M. N. attended a seminar for Burundian refugees on HIV/AIDS prevention, given by Doris Mukangu of the African Women Health, Education, and Employment Center. Following that, A. M. N. walked to a Publix in order to get a money order to pay her electric bill. Upon arriving there, however, she discovered that she did not have enough money. As A. M. N. was returning home, she saw Bizimana with some other people outside. Bizimana asked what she was doing and then told her he would take her back to the Publix with the other people who were going to do their shopping. A. M. N. rode in the back of the van and Bizimana, another man, and his wife were in the front seat of the van on the way to the store. After getting her money order, A. M. N. rode in the front seat on the way home. Bizimana let the man and his wife out of the van because they lived in "the apartment before hers."

---

[2] (Citation and punctuation omitted.) *Thompson v. Brown*, 288 Ga. 855 (708 SE2d 270) (2011).

[3] (Citation omitted.) *Melton v. State*, 282 Ga. App. 685-686 (639 SE2d 411) (2006).

Bizimana then told A. M. N. that he liked her, but A. M. N. responded that she did not like him the way he liked her because she respected him and he was as old as her father.

A. M. N. testified that:

> I am already home. She[4] told him, stop so that I can get out of the car. He kept on insisting so that she would agree [to go with him around America]. She told him to stop, she does not like him. And he kept on moving. He kept on driving. He did not stop. He kept on driving. He kept on driving. She kept on telling him to stop, and he kept on driving.
>
> Q. At some point, did he stop his van? . . .
>
> A. They got to the trash area. He went and parked around the trash can area and parked the car. And he locked the car doors.

Bizimana then fondled A. M. N. and forced her into the rear seat of the van where he "took his private parts and put it in her private parts." A. M. N. was wearing a skirt, which Bizimana pulled up. A. M. N. returned to her apartment and called Ms. Mukangu, who spoke Swahili. According to Ms. Mukangu, A. M. N. was crying, said someone had forced himself on her, and she was afraid that she might have caught something. Ms. Mukangu assisted A. M. N. in contacting Ms. Rubenstein, who went to A. M. N.'s apartment and took her to DeKalb Medical Center, where police were called. A. M. N. did not call 911 because she does not speak English.

Nurse Keena Curtis saw A. M. N. in the emergency room around 11:15 p.m., and A. M. N. told her she was assaulted "in an apartment complex." Then, Physician's Assistant Shannon Smith examined A. M. N., describing her as upset, under distress, and very distraught over what had taken place. A rape kit was completed and forwarded to the Georgia Bureau of Investigation, where it was determined that the vaginal and cervical swabs taken from A. M. N. contained the DNA of Bizimana.

DeKalb County Police Officer Branan Garside was dispatched to the hospital and took an initial report from A. M. N., in which she repeated that Bizimana pulled up her dress and forced himself on her. Officer Garside contacted Detective Batina Rozier of the DeKalb County Police Force and turned the case over to her in the early hours of the next day. Detective Rozier spoke with Ms. Rubenstien who asked that, because they had been at the hospital so long and A. M. N. was tired, Detective Rozier speak with A. M. N. the next day.

---

[4] A. M. N. testified in Swahili, which was translated into English. The translator used the third person for A. M. N.

Because of the language barrier, Detective Rozier had some difficulty getting in touch with A. M. N., but, with a translator, did meet with A. M. N. on December 30, 2007. A. M. N. told Detective Rozier that, following the seminar, she came back home; needed to get a money order from the store; "which there is a Publix right across the street from her apartment complex"; encountered Bizimana and the others; went to the store and returned to the apartment complex, where Bizimana "dropped them off and he took her up to the front part of the complex. There is a parking lot off to the right, and he went and parked over there." A. M. N. then told Detective Rozier that Bizimana forced himself on her.

Detective Rozier was then asked:

Q. Through your investigation, were you able to determine the incident location, where this took place?
A. Yes. It was on the property of Valley Brook Apartments, where she lives.
Q. Do you know where that is located?
A. That is off Valley Brook Place, which is off — near — oh, goodness, North Druid Hills and Lawrenceville Highway.
Q. What county is that in?
A. That is in DeKalb County.

Detective Rozier was asked during cross-examination at trial if she had made it to the scene of the alleged crime, and she answered affirmatively. She noted that there were people "walking around the complex[,]" while she was there. Also, on cross-examination, Detective Rozier was asked if A. M. N. told her how she got home from where the van was, where the intercourse took place. She responded that A. M. N. "walked home, . . . because, again, it is all in the same complex."

At the motion for new trial hearing, Detective Rozier was called by defense counsel and asked what the investigation was that led her to determine the incident location. She responded: "[t]he victim's statement. The victim's statement, she stated where she was raped. *I was familiar with the area so I knew what she was talking about.*"[5]

Detective Rozier interviewed Bizimana twice, once while accompanied by his attorney. Bizimana denied having sexual relations with A. M. N. and did not know why she was accusing him of this.

We find that the evidence was sufficient to enable a rational trier of fact to find Bizimana guilty beyond a reasonable doubt of the

---

[5] (Emphasis supplied.)

charged crime.[6] Despite his argument to the contrary, venue was sufficiently established by Detective Rozier's testimony that the apartment complex where the crime occurred was in DeKalb County.[7]

Even accepting Bizimana's argument that the evidence only supported the conclusion that the victim might have been driven into another county before the rape occurred, this would not preclude a jury's conclusion that venue could be proper in DeKalb County. In *Leftwich v. State*,[8] a victim abducted from Lenox Mall in Fulton County was then driven around wearing blacked out sunglasses for about 20 minutes and raped at an unknown location. Because the most definite testimony regarding the location of the crimes related to Lenox Mall, located in Fulton County, "the jury was authorized to find beyond a reasonable doubt that the rape might have occurred in Fulton County."[9]

There was no error in the denial of Bizimana's motion for new trial based on failure to prove venue.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED AUGUST 1, 2011 —
RECONSIDERATION DENIED AUGUST 18, 2011 — 

*Gerard B. Kleinrock*, for appellant.
*R. Javoyne Hicks White, District Attorney, Deborah D. Wellborn, Assistant District Attorney*, for appellee.

---

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[7] *Rosser v. State*, 284 Ga. 335, 336 (1) (667 SE2d 62) (2008) (Detective's testimony that the apartment complex was in the "south end of the county" and the victim's testimony that her apartment was in Cherokee County were sufficient to prove venue in Cherokee County.); accord *Chapman v. State*, 275 Ga. 314, 317-318 (4) (565 SE2d 442) (2002) (Police officer's statement that he was employed on the date in question as a "City of Atlanta police officer, Fulton County, Georgia" and the fact that the Fulton County Medical Examiner did the autopsies on the body was sufficient to prove venue in Fulton County.).

[8] 299 Ga. App. 392, 398-399 (4) (682 SE2d 614) (2009).

[9] Id. at 399 (4), citing *Hendrix v. State*, 242 Ga. App. 678, 680 (1) (530 SE2d 804) (2000) (reviewing sufficiency of venue determination under OCGA § 17-2-2 (e) and (h) when crime committed in a vehicle); *Drake v. State*, 238 Ga. App. 584, 587-588 (2) (519 SE2d 692) (1999) (holding evidence adequate to show venue because defendant had access to the victim in DeKalb County and might have had intercourse with her there). Accord *Short v. State*, 276 Ga. App. 340, 343 (1) (a) (623 SE2d 195) (2005) (sexual assaults could have been committed in a moving vehicle in either Douglas County or Fulton County, rendering venue proper in Douglas County).